**Carl GORDON, Daniel Healy, Rod Boyes and Michael Warfield, Plaintiffs,**

v.

**William WINPISINGER, individually and as International President of International Association of Machinists and Aerospace Workers, and International Association of Machinists and Aerospace Workers, Defendants.**

**No. 82 CIV 0529.**

United States District Court, E.D. New York.

Jan. 27, 1984.

---

Hall, Clifton & Schwartz, New York City, for plaintiffs.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City (Seymour M. Waldman, Daniel Engelstein, of counsel), New York City, for defendants.

### MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

### FACTS

Plaintiffs are present or retired members of the defendant International Association of Machinists and Aerospace Workers ("IAM"). Plaintiff Gordon is also a member of Air Transportation District Lodge 142 ("District 142"), a subordinate body of IAM.

Plaintiffs published and distributed a newsletter entitled "Hot Line" throughout the Trans World Airlines system. In 1975, District 142 came to suspect the union loyalty of plaintiffs and appointed a committee to investigate their activities. The investigation culminated on March 29, 1978 with internal union disciplinary charges being preferred against plaintiffs and three other members of IAM. The investigation committee recommended that defendant William Winpisinger, IAM's International President ("IP"), appoint a special trial committee to conduct a full hearing on the matter. On April 12, 1978, the IP took jurisdiction and two days later appointed a special trial committee.

The charges against plaintiffs were: (1) dual unionism, in encouraging District 142 to secede from IAM in favor of "AMFA," a rival labor organization; (2) disclosing or exchanging mailing lists with AMFA in an effort to promote dual unionism; (3) disclosing to AMFA matters of negotiation between Trans World Airlines and District 142; and, (4) activities endangering the good and welfare of the local and district lodges of IAM.

After a formal hearing, at which plaintiffs presented no defense, the trial committee dismissed the first three more particularized charges, but found plaintiffs guilty of the fourth more generalized charge. Even though AMFA was engaging in activity against District 142 and TWA, there was no evidence to connect plaintiffs with AMFA, notwithstanding that "Hot Line" was being published simultaneously with the AMFA activities.

Having so found, the trial committee sent its report to the IP, recommending: that all charges be dismissed as to plaintiff Boyes, (since he was charged as an officer or representative, which he is not); that a

note be placed in plaintiff Healy's membership record (since he had retired); that plaintiff Gordon be prevented from holding any office within IAM for five years; and, that plaintiff Warfield receive a severe reprimand and a note be placed in his membership record.

In response to these recommendations, plaintiffs Healy, Boyes and Warfield countered by filing their own charges with the IP against various IAM officials for the infringement of rights provided in the IAM Constitution. The IP, however, dismissed plaintiffs' charges because of their failure to raise these allegations during the formal hearing. The IP adopted in full the recommendation of the trial committee.

A series of unsuccessful appeals followed. On January 31, 1979 Gordon appealed to the IP by letter. Boyes, Healy and Warfield appealed to the IAM General Secretary-Treasurer on February 1, 1979 and Gordon appealed to the IAM on February 10. The General Secretary-Treasurer informed each plaintiff on April 5, 1979 that the IAM Executive Council had voted to sustain the IP's decision.

Plaintiffs filed suit in this Court on March 2, 1982 seeking injunctive relief and damages on three claims. First, plaintiffs allege a violation of § 101(a)(2) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(2),[1] and base their claim for relief on LMRDA §§ 102 and 609. 29 U.S.C. §§ 412[2] and 529.[3] The second and third claims rest on § 301(a) of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), which gives this Court jurisdiction to hear cases involving violation of contracts between an employer and labor organizations or between any such labor organizations.[4] Plaintiffs argue that although they are neither a labor organization nor an employer, they may nevertheless sue under § 301. In addition, plaintiffs allege that the IAM Constitution is a contract which defendants violated by disciplining plaintiffs for reasons not authorized in Article L, § 3 of the Constitution,[5] and by the failure of the IP and General Secretary-Treasurer to act on the plaintiffs' charges against the IAM officials pursuant to Article L, § 15.[6]

Defendants move for summary judgment on the grounds that: (1) all three of plaintiffs' claims are time-barred; and (2) this court lacks subject matter jurisdiction over plaintiffs' second and third claims. In response, plaintiffs have made cross-motions for partial summary judgment, on their first and second claims. The matter was referred to Magistrate Jordan, before whom the parties argued their motions on

---

1. § 101(a)(2) of the LMRDA provides in relevant part:
 Every member of any labor organization shall have the right ... to express any views, arguments or opinions; ... *Provided,* that nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution .... 29 U.S.C. § 411(a)(2)

2. § 102 of the LMRDA provides in relevant part:
 Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. 29 U.S.C. § 412.

3. § 609 of the LMRDA provides:
 It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization,

or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section. 29 U.S.C. § 529

4. § 301(a) of the LMRA provides:
 (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties. 29 U.S.C. § 185(a).

5. Article L, § 3 describes improper conduct subject to intraunion disciplinary action.

6. *See* n. 1, *supra.*

December 7, 1982. The Magistrate then submitted his Report and Recommendation to this Court on June 30, 1983. The parties thereafter filed memoranda in support of and in opposition to the Magistrate's Report.

## DISCUSSION

### I. Statute of Limitations

■ Defendants' first objection is that all plaintiffs' claims are barred by the statute of limitations. They contend that *DelCostello v. International Broth. of Teamsters*, — U.S. —, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) controls, and hence, a six-month limitations period applies. I disagree.

In *DelCostello* an employee brought a so-called "hybrid" claim: he sued his *employer* for breach of a collective bargaining agreement and his *union* for breach of its duty of fair representation. Here, the plaintiffs sue only the union and its President. The employer is not a party. There is, therefore, nothing hybrid about this action. It is, rather, an action against a union for conduct towards its members that is alleged to be arbitrary and unlawful. Accordingly, the six-month period of limitations borrowed by *DelCostello* from § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), does not apply.

The LMRDA contains no statute of limitations. This Court must, therefore, look to state law for the appropriate period of limitations. *Copitas v. Retail Clerks Intern. Ass'n* 618 F.2d 1370, 1372 (9th Cir. 1980); *see also United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1966); *United Parcel Serv. v. Mitchell*, 451 U.S. 56, 61, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981) (cases applying the LMRA).

■ Plaintiffs' LMRDA claim (their first claim) is governed by N.Y.C.P.L.R. § 214(2), which applies a three-year limitations period to actions based upon a "liability, penalty or forfeiture created or imposed by statute." Similarly, the plaintiffs' LMRA claims (their second and third claims) are governed by the six-year limitations period applicable to actions based upon a contractual obligation or liability. N.Y.C.P.L.R. § 213(2) (McKinney 1972). The second and third claims are obviously timely. The first claim is more problematical because it is not entirely clear when the three-year statute of limitations began to run.

■ As mentioned above, the IP adopted the disciplinary report and recommendation of the special trial committee on January 16, 1979. After exhausting intra-union appeals, plaintiffs filed suit in this Court on March 2, 1982. If the LMRDA claim accrued in January, 1979, then it is untimely. I hold, however, that it did not accrue then, but only after the plaintiffs had exhausted their intra-union remedies.

LMRDA § 101(a)(4) generally bars any restriction upon a member's right to sue his labor organization; but "any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal ... proceedings against such organization or any officer thereof." 29 U.S.C. § 411(a)(4). Consonant with this provision, the IAM Constitution, Article L, § 16 forbids union members to bring a lawsuit to resolve a grievance until all remedies provided in the Constitution have been exhausted. Moreover:

> The basic intent and purpose of [§ 101(a)(4) ] was to insure the right of a union member to resort to the courts ... without interference or frustration of that right by a labor organization. On the other hand, it was not, and is not, the purpose of the law to eliminate existing grievance procedures established by union constitutions for redress of [an] alleged violation of their internal governing laws.

2 NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959, 1432 (Senator Kennedy).

As a matter of social policy, "a dispute between a union or other private associa-

tion and one of its members should in general first be submitted to the association's own tribunals." *Libutti v. DiBrizzi*, 337 F.2d 216, 219 (2d Cir.1964). It is clear, therefore, that the plaintiffs claim did not accrue—as the defendants would have it—on January 16, 1979. Plaintiffs had an additional period of up to four months to pursue their grievances through the union dispute resolution process. Under this calculus, the first claim would not have accrued until May 1979, and this action was commenced in March 1982. The first claim is, therefore, timely.

## II. Subject Matter Jurisdiction

■ Defendants contend that this Court lacks subject matter jurisdiction over plaintiffs' second and third claims because plaintiffs, as employees, lack standing to sue under LMRA § 301(a). This contention is based on the language of § 301, which provides federal jurisdiction in suits for violations of contracts between an employer and a labor organization, or between any such labor organizations. 29 U.S.C. § 185(a). The Supreme Court, however, has noted that § 301 "contemplates suits by ... individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate 'uniquely personal' rights of employees such as wages, hours, overtime pay and wrongful discharge." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).

Hence, employees are not entirely precluded from suing under § 301. However, a further inquiry is necessary. While the Court in *Abrams v. Carrier Corp.*, 434 F.2d 1234 (2d Cir.1970), *cert. denied*, 401 U.S. 1009, 91 S.Ct. 1253, 28 L.Ed.2d 545 (1971), denied plaintiff-members standing to sue the victorious union in a representation election for breach of an inter-union agreement under § 301(a), it did so only after deciding that plaintiffs could not assert "the necessary allegations of demonstrable, particularized injury." *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975). Standing, therefore, distils to the question whether plaintiffs can demonstrate a particularized injury to uniquely personal rights. I find that the plaintiffs have standing.

Freedom of expression is, of course, expressly guaranteed by the First Amendment to the United States Constitution. While defendants' private actions will not violate the First Amendment, it is significant that freedom of expression, and redress for violations thereof, is expressly guaranteed to union members in the Bill of Rights subchapter of the LMRDA.[7] Since this subchapter is designed "to encourage members freely to dissent from the policies and administration of the leadership or to discuss openly those policies and practices," it should be given "expansive protection." *Mallick v. International Broth. of Elec. Workers*, 644 F.2d 228, 235 (3d Cir.1981).

Obviously, the subchapter can receive "expansive protection" only if the rights thereby afforded to union members individually remain inviolate.[8] The right to speak freely in a labor setting should be afforded at least as much protection as an employee's interest in overtime pay, a right which was characterized as "uniquely personal" in *Hines*, 424 U.S. at 562, 96 S.Ct. at 1055.

Accordingly, I find that plaintiffs' rights of freedom of speech and assembly are "uniquely personal" and that plaintiffs have demonstrated sufficiently particularized injury to afford them standing to sue under § 301(a). The court has subject matter jurisdiction and, accordingly, defendants' motion for summary judgment on plaintiffs' second and third claims is denied.

## III. Plaintiffs' Cross-Motions

The special trial committee found plaintiffs guilty of only one of the four

---

**7.** 29 U.S.C. §§ 411–415.

**8.** These rights are subject, of course, to the union's right to adopt reasonable rules as to the responsibilities of each member to the union. *See* n. 2, *supra*.

charges—involvement in activities which may endanger the good and welfare of local and/or district lodges of IAM. The IAM lists as a chargeable offense "any other conduct unbecoming a member of the IAM" in Article L, § 3. Plaintiffs, however, maintain that their actions do not constitute a chargeable offense under the IAM Constitution, and, thus, demand summary judgments on their first and second claims. Defendants contend that there is a genuine issue of fact as to whether plaintiffs' actions constitute a chargeable offense.

The Magistrate concluded that plaintiffs' actions could not be characterized as activities of dual unionism and, thus, did not constitute a chargeable offense. I am not so certain.

 A union constitution need not specify with mathematical precision all conduct that is prohibited. *International Brotherhood of Boilermakers v. Hardeman*, 401 U.S. 233, 244, 91 S.Ct. 609, 616, 28 L.Ed.2d 609 (1971). The "unbecoming a member" offense set out in Article L, § 3 is obviously a "catch-all" charge for activities which are not expressly proscribed in the Constitution, but which may warrant the imposition of union discipline, nonetheless. Certainly, it is the union's prerogative to have such a proscription, so long as it is not implemented in an abusive or malicious manner. In addition, the IAM is entitled to impose reasonable forms of discipline under the LMRDA. *See Rosario v. Local 10*, 605 F.2d 1228, 1239 (2d Cir.1979).

 A delicate balance must be struck between a member's conduct that is protected by federal statute and that which is lawfully prohibited by the union constitution. In the instant case, the issue whether plaintiffs' activities in publishing "Hot Line," said to endanger the good and welfare of IAM's subordinate unions, may properly be deemed conduct unbecoming an IAM member can only be decided after a full presentation of the facts. Therefore, plaintiffs' cross-motion for summary judgment is denied as to their first and second claims. Fed.R.Civ.P. 56(c).

## IV. Individual Liability

### A. LMRA Claims

 Defendant Winpisinger asserts that, whatever may be the plaintiffs' rights, he cannot be liable to them in his individual capacity. As to the LMRA claims, Winpisinger is correct that he cannot be held liable for money damages. *Complete Auto Transit, Inc. v. Reis*, 451 U.S. 401, 410, 101 S.Ct. 1836, 1842, 68 L.Ed.2d 248 (1981). However, he is subject to claims for equitable relief. *Wilkes-Barre Publishing Co. v. Local 120*, 647 F.2d 372, 379 (3d Cir.1981) *Cert. denied*, 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982). Insofar as the LMRA claims seek money damages from Winpisinger, these claims are dismissed against him individually. The demand for equitable relief will stand.

### B. LMRDA Claims

 Under the LMRDA, a union official may be personally liable for money damages under § 102, if he aids, instigates or directs a wrongful use of union power to deprive a member of his rights under § 101. *Rosario, supra*, 605 F.2d at 1246–37. Plaintiffs allege that defendant Winpisinger had special knowledge that the Bill of Rights subchapter of the LMRDA prohibited a union from disciplining union members even for publishing or distributing literature containing "scandalous, false, or malicious statements." Indeed, it is alleged that he had personally been involved in removing from the IAM Constitution language that would have empowered the union to punish members who distributed such scurrilous statements. Thus, if plaintiffs prevail over IAM on their LMRDA claim, defendant Winpisinger may also be found personally liable. Accordingly, he remains a proper party as to plaintiffs' claim under §§ 102 and 609 of the LMRDA.

For the foregoing reasons, defendants' motion for summary judgment is denied, except that plaintiffs' LMRA claims are dismissed as against defendant Winpising-

er individually. Plaintiffs' cross-motions for summary judgment on the first and second claims are also denied.

SO ORDERED.