Clyde L. DAVIS, Jr., an individual,
Plaintiff-Appellant,

v.

UNITED AUTOMOBILE, AEROSPACE
AND AGRICULTURE IMPLEMENT
WORKERS OF AMERICA, et al., De-
fendants-Appellees.

No. 84–3550.

United States Court of Appeals,
Eleventh Circuit.

July 22, 1985.

Jere D. McWinn, Star, Idaho, John Stone,
Jacksonville, Fla., for plaintiff-appellant.

Mark F. Kelly, Tampa, Fla., for defend-
ants-appellees.

Betsey A. Engel, Daniel W. Sherrick, De-
troit, Mich., for Intern. Union, UAW and its
Local 970.

Before RONEY and HILL, Circuit
Judges, and TUTTLE, Senior Circuit
Judge.

JAMES C. HILL, Circuit Judge:

Plaintiff/appellant Clyde Davis com-
menced this action under the Labor-
Management Reporting and Disclosure Act
(LMRDA), 29 U.S.C. § 401 *et seq.*, alleging
that he was expelled from his union in
retaliation for exercising his statutory
right of free speech protected under 29
U.S.C. § 411(a)(2). The district court

granted summary judgment in favor of defendants/appellees on the ground that Davis failed to exhaust his internal union procedures before seeking judicial intervention. We do not reach the issue of exhaustion, determining instead that this suit is barred by the six-month statute of limitations borrowed from section 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b).

## I. FACTS

From 1960 through 1976, Davis was an employee of Ford Motor Company and a member of the United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Local 970. During those years he held a variety of local union offices, including president and vice-president.

On March 16, 1976, Davis was charged with several violations of the UAW Constitution, based on alleged threats and intimidation of union members and threats to destroy the local union.[1] In April, 1976, a trial was held before a union trial board in Jacksonville. Davis was served with timely notice of this trial, but chose not to attend the trial or offer any defense, allegedly because of his apprehension that there might be physical altercations between himself and others. On September 14, 1976, Davis was informed that he had been found guilty of the violations as charged, and that he had been expelled from the local and international unions.[2]

Rather than availing himself of available internal UAW appeals processes, see generally Monroe v. International Union, UAW, 723 F.2d 22, 24 (6th Cir.1983) (description of UAW appeal procedures); UAW Constitution, art. 33 (1977), Davis filed suit against the local and international unions. In June, 1977, he filed a complaint in Florida state court seeking damages for mental anguish, resulting from his alleged wrongful expulsion from the unions. This suit was removed to federal court, remanded to state court, and removed back to federal court, for good, in August, 1978. Meanwhile, in June, 1978, appellant filed a complaint in federal court alleging wrongful expulsion from the unions contrary to federal law and the unions' rules, and seeking damages for loss of wages and physical and mental suffering. In June 1981, the two cases were consolidated.

In June, 1981, and again in July, 1982, appellant moved to file an amended complaint. In October, 1983, although the court had not yet ruled on the motions, appellant filed an amended complaint which added allegations that appellant's expulsion was motivated by plaintiff's criticism of union officers, in violation of his right to free speech under section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2).[3] Appellant also added allegations that the UAW's internal appeals procedures were unreasonable and that it would be futile for him to exhaust them, and that exhaustion was not necessary because free speech violations

1. A copy of the notice of charges filed against Davis is attached as an appendix to this case. The majority of these charges appear to be allegations that Davis was vocal in his criticism of union officials and union management. The expression of views, arguments and opinions, including criticism of union management, is protected under 29 U.S.C. § 411(a)(2). See Airline Maintenance Lodge 702 v. Loudermilk, 444 F.2d 719, 721–24 (5th Cir.1971); Fulton Lodge No. 2 v. Nix, 415 F.2d 212, 218 (5th Cir.1969).

2. Although expelled from the unions, Davis apparently did remain at his job with Ford for several more years.

3. The LMRDA created a statutory "Bill of Rights of Members of Labor Organizations," 29 U.S.C. §§ 411–15, which included a right to freedom of speech and assembly:

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
29 U.S.C. § 411(a)(2).

were involved. In April, 1984, appellant's motions to amend were denied and the amended complaint was stricken.

In July, 1984, the district court granted the appellees' motion for summary judgment on the ground that appellant did not exhaust available internal UAW appeals procedures before seeking judicial intervention.[4] Although the court had stricken Davis' amended complaint, its order granting summary judgment addressed the allegations in the amended complaint. The court found that the UAW's intricate appellate grievance procedures were reasonable and adequately safeguarded a union member's interests; and that Davis, as a sixteen-year member who had held several local union offices, could not complain about lack of knowledge of the grievance procedures. It found further that appellant's alleged free speech claims involved "threats and intimidation ... against other union members as well as alleged disparaging statements against the organization;" that these areas touched on the union's internal affairs; and thus that the conduct was not protected free speech either in the traditional sense or within the scope of 29 U.S.C. § 411(a)(2).

## II. DISCUSSION

Appellant contends that the district court abused its discretion in granting summary judgment for failure to exhaust. He argues that exhaustion is not required when a free speech violation under the LMRDA is involved; that his allegations involve issues in the "public domain" which internal union procedures are inadequate to deal with; and that exhaustion should not be required because the UAW's internal remedies are unreasonable, inadequate, and unfair.

■ We do not address the merits of appellant's arguments on exhaustion, but instead affirm the grant of summary judgment on the basis that appellant's cause of action, filed at least eleven months after he was informed of his expulsion from the unions, is barred by the six-month statute of limitations borrowed from § 10(b) of the NLRA, 29 U.S.C. § 160(b).[5]

■ Since the LMRDA does not provide an express limitations period for suits brought pursuant to it, a federal court must "borrow" the most appropriate limitations period from some other source. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). Generally, this involves applying the statute of limitations of the most closely analogous state action. *Id.*

In *DelCostello*, however, the Supreme Court applied the six-month limitations period from § 10(b) of the NLRA[6] to a "hy-

---

**4.** Section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), entitled "Protection of the right to sue," provides in relevant part, that:

No labor organization shall limit the right of any member thereof to institute an action in any court ... *Provided,* that any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof.

Section 411(a)(4) thus provides for permissive exhaustion, at the discretion of the trial judge. In exercising this discretion, a court must determine "whether the available [union] procedures are adequate and reasonable in light of the facts of the particular case." *NLRB v. Marine Workers*, 391 U.S. 418, 428, 88 S.Ct. 1717, 1723, 20 L.Ed.2d 706 (1968). At least three factors are relevant in this inquiry:

first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether

the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks ...; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. *Clayton v. International Union, UAW,* 451 U.S. 679, 689, 101 S.Ct. 2088, 2095, 68 L.Ed.2d 538 (1981).

**5.** The UAW raised the statute of limitations issue in district court, but the district court declined to rule on it since it had granted summary judgment for failure to exhaust. The parties submitted supplemental briefs to this court on the statute of limitations issue.

**6.** Section 10 of the NLRA, 29 U.S.C. § 160, sets forth the NLRB's powers to prevent unfair labor practices. Section 10(b) provides, in relevant part:

Whenever it is charged that any person has engaged in or is engaging in any such unfair

brid" section 301 [7]/fair representation suit brought by an employee against his employer and his union.[8] The Court first noted that it was improper to apply mechanically a state statute of limitations to a federal statutory cause of action when such an application would frustrate federal policies, and then emphasized the important federal interests in promoting the formation of collective bargaining agreements and the speedy, private settlement of disputes under them. *Id.* at 2289. The Court felt that a hybrid section 301/fair representation claim amounted to a "direct challenge" to the private settlement of disputes under a collective bargaining agreement; and that such a claim had no close analogy in ordinary state law. *Id.* at 2291. Therefore, the Court determined that the NLRA unfair labor practices statute, 29 U.S.C. § 160, was the closest analogy to the § 301/fair representation claim—because of the similarity in the rights asserted in fair representation claims and unfair labor practice charges (both involving allegations of unfair, arbitrary, or discriminatory treatment of workers by unions), and the similarity of considerations relevant to the choice of a limitations period in the two contexts. *Id.* at 2293–94.

In § 10(b) of the NLRA, Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system. That is precisely the balance at issue in this case. The employee's interest in setting aside the 'final and binding' determination of a griev-

ance through the method established by the collective-bargaining agreement unquestionably implicates 'those consensual processes that federal labor law is chiefly designed to promote—the formation of the ... agreement and the private settlement of disputes under it.' *[International Union, United Auto., Aerospace and Agr. Implement Workers of America UAW v.] Hoosier* [Cardinal Corp.], 383 U.S. [, 696] at 702, 86 S.Ct. [, 1107] at 1111 [, 16 L.Ed.2d 192 (1966)]. Accordingly, '[t]he need for uniformity' among procedures followed for similar claims, *ibid.*, as well as the clear congressional indication of the proper balance between the interests at stake, counsels the adoption of § 10(b) of the NLRA as the appropriate limitations period for lawsuits such as this.

*Id.* at 2294 (*quoting United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 70–71, 101 S.Ct. 1559, 1567–1568, 67 L.Ed.2d 732 (Stewart, J., concurring)). Thus, the Court applied the six-month limitations period from 29 U.S.C. § 160(b), although it cautioned that its holding should not be taken as a departure from the usual practice of borrowing state limitations periods for federal causes of action, "in labor law or elsewhere." *Id.*, 103 S.Ct. at 2294.

Since *DelCostello*, three Circuit Courts of Appeals have relied on the Supreme Court's analysis in *DelCostello* to apply the same six-month limitations period to suits brought under section 102 of the LMRDA, 29 U.S.C. § 412. *Vallone v. Local Union No. 705*, 755 F.2d 520, 521–22 (7th Cir.1984) (suit alleging violations of 29 U.S.C. § 411, including right to free speech); *Local Union 1397 v. United Steelworkers of America*, 748 F.2d 180 (3d Cir.1984) (alleging

labor practice, the Board, or any agent or agency designated by the Board for such purposes, shall have power to issue and cause to be served upon such person a complaint stating the charges in that respect, and containing a notice of hearing before the Board or a member thereof, or before a designated agent or agency, at a place therein fixed, not less than five days after the serving of said complaint: *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the

service of a copy thereof upon the person against whom such charge is made.
29 U.S.C. § 160(b).

7. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

8. This suit alleged that the employer had breached a provision of the collective bargaining agreement and that the union had breached its duty of fair representation by mishandling the ensuing grievance and arbitration proceedings. 103 S.Ct. at 2285.

violations of § 411, including right to free expression); *Linder v. Berge,* 739 F.2d 686, 690 (1st Cir.1984) (alleging violations of 29 U.S.C. § 414, for failure to provide with copy of collective bargaining agreement).[9] We feel constrained by the rationale of *DelCostello* and the holdings of our sister circuits to reach the same conclusion in the present case.

The gist of appellant's complaint is that he was unlawfully expelled from the UAW in retaliation for exercising his rights of free speech, guaranteed by section 101(a)(2) of the LMRDA, in criticizing union officials and union management policies. As in *Del-Costello,* there are no closely analogous actions under the state law.[10] In addition, there is a "family resemblance" between rights asserted under the LMRDA and unfair labor practice charges under the NLRA, in that both seek to "protect[ ] ... individual workers from arbitrary actions by unions, which have been appointed the exclusive representatives of such individuals in the workplace." *Local Union 1397,* 748 F.2d at 183; *see DelCostello,* 103 S.Ct. at 2293.

However, we note an important distinction between the present action and a hybrid § 301/fair representation claim as was alleged in *DelCostello. DelCostello* employed a balancing analysis—the Supreme Court applied section 10(b)'s six-month limitations period only after concluding that such a period struck a proper balance between the national interests in stable bargaining relationships and finality of private settlements thereunder, and the employee's interest in setting aside an unjust settlement under the collective bargaining system. 103 S.Ct. at 2294. The present action, alleging a violation of statutorily-protected free speech, involves a different balance of interests. First, an action alleging a violation of 29 U.S.C. § 411 is brought only against the union; the employer is not involved. Therefore, the national interests in stable labor-management bargaining relationships and the speedy, final resolution of disputes under a collective bargaining agreement are not implicated.[11] Accordingly, the need for national uniformity in the application of limitation periods to such an action is not as great. *See DelCostello,* 103 S.Ct. at 2289; *Auto Workers v. Hoosier Corp.,* 383 U.S. 696, 702, 86 S.Ct. 1107, 1111, 16 L.Ed.2d 192 (1966). Furthermore, a union member's interest in protection against the infringement of his rights of free speech rises to a national interest, as embodied in section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2), and thus seems of greater importance than an employee's interest in setting aside an individual settlement under a collective bargaining agreement.

■ Nevertheless, we feel constrained by the analysis employed in *DelCostello* to apply the same limitations period to the present lawsuit. In *DelCostello,* the Supreme Court found a strong connection between the national interest in labor peace and the necessity of a short time period in which to bring an action based on a labor union's duty of fair representation to its members. We believe we are bound to find a similar connection between labor peace and an action based on a union's alleged mistreatment of its members by the denial of statutorily protected rights.[12] We ac-

---

9. *Accord, Turco v. Boilermakers,* 592 F.Supp. 1293 (E.D.N.Y.1984); *Adkins v. General Motors,* 573 F.Supp. 1188 (S.D.Ohio 1983). *But see Bernard v. Delivery Drivers,* 587 F.Supp. 524 (D.Colo.1984); *Gordon v. Winpisinger,* 581 F.Supp. 234 (E.D.N.Y.1984).

10. Appellant urges that we borrow Florida's four-year statute of limitations applicable to actions founded on negligence or statutory liability, 7 Fla.Stat. § 95.11(3)(a), (f); or the two-year period applicable to professional malpractice actions. *Id.* at § 95.11(4)(a).

11. We realize that the Third Circuit has concluded that the rapid resolution of internal union disputes such as the present is necessary to maintain the federal goal of stable collective bargaining relationships, because "dissension within a union naturally affects that union's activities and effectiveness in the collective bargaining arena." *Local Union 1397,* 748 F.2d at 184. This link appears rather tenuous in the situation of a single dispute between an individual union member and the union.

12. In *Erkins v. United Steelworkers of America,* 723 F.2d 837, 839 (11th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984), this circuit held that the six-month limitations period of 29 U.S.C. § 160(b) applies to a breach

cordingly hold that the six-month limitations period of 29 U.S.C. § 160(b) applies to LMRDA actions brought under 29 U.S.C. § 412 alleging union violations of 29 U.S.C. § 411.[13]

■ Appellant contends that this limitation period should not be applied retroactively to his claim, citing *Chevron Oil Co. v. Huson,* 404 U.S. 97, 105–109, 92 S.Ct. 349, 354–357, 30 L.Ed.2d 296 (1971). We cannot agree. We are bound by our holding in *Rogers v. Lockheed-Georgia Co.,* 720 F.2d 1247 (11th Cir.1983), *cert. denied,* — U.S. ——, 105 S.Ct. 292, 83 L.Ed.2d 227 (1984), to apply the six-month limitations period retroactively.[14]

Appellant was notified of his expulsion from the Local and International UAW on September 14, 1976. He did not file suit until June, 1977. Therefore, summary judgment in favor of the defendants/appellees is AFFIRMED because the appellant's claims are barred by the statute of limitations.

## APPENDIX

In accordance with Article 17 Section 10 and Article 31 Section 1 & 2 of the Constitution of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Charges have been made against Clyde L. Davis, member of Local 970 UAW.

In accordance with Article 31 Section 3, the Local Union Executive Board of Local 970 UAW reviewed the charges listed below on March 11, 1976 and did not find them to be improper.

---

of duty of fair representation suit brought against a union, even when there is no corresponding section 301 action filed against the employer. This reinforces our conclusion that we are bound to apply the same limitations period to the present cause of action filed solely against the union.

**13.** We do note a potential problem with applying the six-month limitations period to a suit alleging a violation of § 101 of the LMRDA, 29 U.S.C. § 411. A cause of action under section 411 accrues when the plaintiff union member discovers, or in the exercise of reasonable diligence should have discovered, the act constituting the alleged violations; at which time the statute of limitations begins to run. *See Erkins v. United Steelworkers of America,* 723 F.2d 837, 839 (11th Cir.), *cert. denied,* — U.S. ——, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984); *Vallone,* 755 F.2d at 522. However, section 411(a)(4) provides that a union member may be required to exhaust reasonable internal union procedures for up to four months before proceeding with a suit under section 412. *See supra* note 4. Thus, union members might be forced into a "Catch-22" situation in which they could be barred from suing the union if they wait to sue for more than six months while exhausting union remedies, but could be dismissed from federal court for failure to exhaust internal remedies if they file suit within the limitations period without seeking to exhaust. *Cf. Vallone,* 755 F.2d at 522 (plaintiff argues that federal claim under § 411 does not accrue until final disposition of grievances filed with unions).

Two possible solutions come to mind. First, the limitations period might be tolled during the time a union member is exhausting his union remedies. *Cf. Gentilviso v. New York Public Library,* 589 F.Supp. 587, 592 (S.D.N.Y.1984)

(general federal rule on tolling of limitations period). Second, a court could require the filing of the lawsuit within six months, but stay the judicial proceedings pending completion of exhaustion of union remedies. *Cf. Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975) (suggesting that plaintiff might ask court to stay proceedings until administrative efforts completed); *Vallone,* 755 F.2d at 522 (plaintiffs need not await final outcome of grievance before filing suit against union).

We need not resolve this potential problem in the present case, since appellant filed his first suit approximately eleven months after his cause of action accrued (when he was notified of his expulsion from the union), without ever seeking to exhaust union remedies in the intervening time.

**14.** The present case appears closely analogous to the situation in the *Chevron Oil* case, where the Supreme Court held that, in an action commenced and prosecuted in reasonable belief (based on federal court decisions) that a short one-year statute of limitations did not apply, a United States Supreme Court decision requiring the contrary conclusion, announced while pretrial discovery proceedings were pending, would not be applied retroactively to bar the action. 404 U.S. at 105–09, 92 S.Ct. at 354–357. However, we are bound by our precedent in *Rogers,* which conclusively determined that the six-month limitations period borrowed from 29 U.S.C. § 160(b) should be applied retroactively in order to further the federal labor policies inherent in the rule and to prevent the inequitable results of different state limitations periods being applied to essentially similar federal causes of action. 720 F.2d at 1250.

1. "There are two or three people I intend to get rid of to make this a better warehouse." (A threat)

2. Using a Brothers own telephone call against him to satisfy his own sadistic humor. (Refer to grievance A–70354) (Intimidation)

3. Davis has belittled this Local in every way he could with his statements

   a. "Since I went out of office the Union has become useless."

   b. "When I become foreman I will not have any trouble controling the committee since it is the worst we have ever had."

   c. "If Richard Redding slows down in his work it will be easy to stick it in his ass."

   d. "I could write Bob Adams up at any time I want to."

4. Undermining Union officers in an attempt to create dissension between the Local Union President and Building Chairman. Davis's use of twisting the appropriate related acts to show that F. Shaffer was responsible for the Companies discriminatory practice of making up lost time. Davis stated to the Chairman the reason we had to stop letting people make up time was because of F. Shaffer. This was found to be untrue and it was Davis himself that stopped this procedure. (Refer to grievance A–70357)

The above allegations can be substantiated in part or in whole by the following members: Tommy L. Crego, Larry E. Carpenter, Frank Y. Shaffer, Frank G. Atkinson, R.H. Adams, Hayward Mathis, and D.D. Beecher.

C.L. Davis has made the statement that he would destroy this Local Union. He made his intentions very clear at the last Union meeting he attended. By the use of false accusations to the membership that we were in imminent danger of getting an Administrator due to poor leadership by the present Union Officers. He made false accusations that the Financial Secretary was not legitimately working on the books when paid by the Union to do so. This was found to be untrue since Davis had no proof to substantiate his charge. A charge of this nature by Davis without substantial evidence can only be considered a slanderous accusation in an attempt to create dissension in the Local Union and weaken the internal structure.

The above allegations can be substantiated by Tommy L. Crego.