**Lawrence E. WARING, Plaintiff,**

v.

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 1414 OF SAVANNAH, GEORGIA and John H. Mackey, Individually and as Agent for Defendant Local 1414, Defendants.**

No. CV486–401.

United States District Court,
S.D. Georgia,
Savannah Division.

Dec. 5, 1986.

On Motion to Dissolve Injunction
Jan. 13, 1987.

David Roberson, Savannah, Ga., for plaintiff.

Fletcher Farrington, Savannah, Ga., for defendants.

## ORDER

EDENFIELD, District Judge.

Before the Court is plaintiff Lawrence Waring's complaint for damages and injunctive relief. Mr. Waring alleges that Local 1414 of the International Longshoremen's Association ("ILA") violated 29 U.S.C. § 411(a)(5), in illegally suspending him from union membership, and in subsequently removing the plaintiff's name from a ballot for upcoming union elections.

## BACKGROUND

This case involves an ongoing internal union dispute, brought to a head by the local organization's impending triennial elections. The facts, briefly, are as follows. On January 8, 1986 the plaintiff caused an article to be published in a local newspaper. The article announced that a fellow union member, Eddie McBride, had been made "Man of the Year" by Local 1414. Local 1414 does not recognize a "Man of the Year"; the article was false and misleading, notwithstanding the plaintiff's contention that it was with the best of intentions that he caused the article to be printed.

The article was published by the paper without charge. Mr. Waring, however, bought 150 copies of the paper at a reduced bulk price of $30, and proceeded to sell these to union members at the union hall for $1 per copy. According to the plaintiff, he only collected this fee from a sufficient number of persons to enable him to cover the purchase price; after having recouped his expenses, he distributed the remainder of the papers free of charge.

On January 10, 1986 the plaintiff, Mr. Waring, received a letter informing him that he was charged with violations of Article XII (Rules 12 & 28) and Article XIII (Section 10) of the local's constitution and by-laws, and of Article XVII of the international organization's constitution and by-laws. The letter "requested" that Mr. Waring be present at a hearing to be held concerning his alleged violations on January 16, 1986. Article XII, Rule 12 proscribes misappropriation of the union funds or property, and calls for expulsion of any member found guilty of a violation. Rule 28 of the same Article prohibits any member, *inter alia*, from making statements to the news media as the representative of the local on any subject pertaining to union affairs. This rule provides that a $200 fine will be levied on a member for a first offense. Article XIII, Section 10 provides the penalties that may be imposed "in cases where no specific punishment is provided for [sic] the Constitution or By-Laws." The penalties described include fines, reprimands, or expulsion. Article XVII of the international constitution requires that district union organizations conduct semi-annual financial audits.

Mr. Waring did not attend the January 16 hearing. On January 17, he received a letter informing him that he had been sus-

pended from the local for a period of one year and that he had been fined $50. The letter stated:

> You were found guilty of violations under Article XXVII of the International Constitution and By-Laws which governs the illegal use of the name; and Article XII, Rule 28 of ILA Local 1414 Constitution and By-Laws. You were additionally charged under Article XII, Rule 15A for failing to appear before the Executive Board as directed on January 16, 1986.

The minutes of the executive board meeting at which these actions were taken against the plaintiff indicate that the $50 fine was assessed because the plaintiff had failed to appear. Therefore, the fine was levied pursuant to Section 15A, and was not a sanction relating directly to plaintiff's dissemination of the false newspaper article.

A lengthy recital of most of the events that transpired during the months that followed seems unnecessary. Suffice it to say that the plaintiff may or may not have attempted to appeal his suspension to the board membership in accordance with the appropriate regulations. The defendants claim that he did not. Specifically, they claim: that he failed to direct a letter, as required by the international constitution, to the recording secretary, prior to approaching the general membership; that he failed to appeal within the time limits set by the same document; and that he directed complaints and requests for relief to district union personnel, notwithstanding clear international constitutional provisions mandating that such disputes be resolved at the local level. According to the plaintiff, he *did* try to appeal the suspension locally, by approaching the local union membership directly. The plaintiff and several of his witnesses contend, in fact, that a long-standing *custom* of the union local allows for direct appeal without adherence to the strict formalities of the international constitution. Plaintiff maintains, however, that in attempting thus to appeal, he was on two occasions ejected from the union hall and arrested, allegedly at the instigation of the president of the local—a member of the executive board, many of the members of which being no great friends of the plaintiff.[1] Ultimately, at a meeting held on June 23, 1986, plaintiff's appeal of his suspension was heard by the membership, when a letter from him was read at a general meeting and was "received in information" (denied). The procedure employed for "receiving" an appeal "in information" apparently requires that one member move to receive the appeal in information and that another member second the motion. It appears that no general vote of the membership is taken. *See* McBride Testimony, Tr. at ——. At the meeting in issue, the recording secretary (another executive board member) moved to receive the appeal in information, and the motion was seconded.

The situation at present, after many months of legal jostling within the union disciplinary system, is that plaintiff is still considered by the local to be serving his one year suspension.[2] Consequently, Mr. Waring was denied admittance to the union

---

1. The Court does not consider in this opinion the facts surrounding plaintiff's *permanent* suspension. This additional suspension came as the direct response to a rather uncomplimentary letter written by the plaintiff concerning certain members of the executive board. In that letter of May 7, 1986, which was addressed to the local union membership, the plaintiff claimed that the board members were conspiring to make it impossible for the plaintiff to engage in union activity, "knowing that this is an election year." The plaintiff also referred to various board members as, among other things, "status seeker[s]" and "cheese eating puppets." Because the board's decision to suspend the plaintiff permanently was successfully appealed to the union membership, the facts surrounding that suspension are irrelevant to the Court's inquiry concerning the appropriateness of injunctive relief. Whether these facts may have some probative value on plaintiff's damages claims need not now be considered.

2. The Court is not persuaded that the August 22, 1986 "granting" of plaintiff's appeal of his permanent suspension (i.e., the lifting of his permanent suspension by the general membership) worked to lift the one-year suspension as well.

hall during the officer nominations held on November 10, 1986.

It is this nomination meeting and the events arising after the meeting that are of importance to the matters at hand. At the meeting, notwithstanding Mr. Waring's absence, a fellow local member nominated the plaintiff for the position of treasurer. Problems arose when, several days later, the plaintiff was informed by the election committee that his name had been stricken from the ballot because: 1) he had been suspended from membership; and 2) he had not complied with the formalities outlined by Article VI, Section 5 of the local constitution and by-laws, governing acceptance of nominations by persons not present at the nomination meeting.

## LAW AND ANALYSIS

The Court has before it at this time only the complaint and a short brief submitted by the defendants contesting the plaintiff's right to injunctive relief. Nevertheless, it appears that the question presented can be easily resolved, at least with respect to the requested preliminary injunction. In fact, seldom will a set of facts so clearly favoring district court intervention present itself.

■ The Court need look only to the narrow issue of whether plaintiff's initial one-year suspension was valid for purposes of 29 U.S.C. § 411(a)(5). In other words, the question is whether the plaintiff was afforded due process—whether he was afforded a full and fair hearing—when he was initially suspended. *Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 246, 91 S.Ct. 609, 617, 28 L.Ed.2d 10 (1971). If he was not validly suspended, then he remained at all times a member in good standing. *Allen v. Int'l Alliance of Theatrical, Stage Employees and Moving Picture Mach. Operators of the United States and Canada, AFL–CIO*, 338 F.2d 309 (5th Cir.1964). Plaintiff's failure to appear at the executive board meeting, if he was not apprised of the charges he was to defend, would not constitute a waiver of his rights. Nor would subsequent "ratification" of a

fatally tainted board decision, through the "receiving in information" of plaintiff's appeal on June 23, 1986 correct an illegal suspension. A full and fair rehearing is required where a union member is convicted without due process, and the union appeal in this case did not afford such protection. *Goodman v. Laborers' Union of North America*, 742 F.2d 780 (3d Cir.1984); *Jacques v. Local 1418, Int'l Longshoremen's Ass'n.*, 246 F.Supp. 857 (E.D.La. 1965), *aff'd*, 404 F.2d 703 (5th Cir.1969). If the plaintiff was a member in good standing, he not only was eligible for nomination to hold the position of treasurer, but also should not have been barred from the meeting at which nominations were taken. Had Mr. Waring been allowed to enter, he could have accepted his nomination in accordance with standard union policy.

Due process under 29 U.S.C. § 411(a)(5) requires, *inter alia*, that an individual be "served with written specific charges." "These charges must be ... 'specific enough to inform the accused member of the offense that he has allegedly committed.' Where, as here, the union's charges make reference to specific written provisions, [§ 411(a)(5)] ... empowers the federal courts to examine those provisions and determine whether the union member had been misled or otherwise prejudiced in the presentation of his defense." *Hardeman, supra*, 401 U.S. at 245, 91 S.Ct. at 616–17.

In this case, the plaintiff was informed that he was charged under several sections of the local and international constitutions. No mention of the contents of the various subsections he was alleged to have violated was made. Granted, the Court finds it difficult to believe that Mr. Waring did not have knowledge of the *behavior* on his part that led to his being charged. Nevertheless, the union did mislead the plaintiff. The union charged the plaintiff under that provision of the local constitution and by-laws which prohibits members from speaking as the representative of the union on matters pertaining to union affairs. This local rule provides a specific punishment of $200 for a first offense. The letter inform-

ing Mr. Waring of the charges preferred also stated that he was alleged to have violated Article XVII of the international constitution and by-laws, which requires that district union organizations conduct internal financial audits. This charge was obviously the result of a typographical error, for it is apparent, in hindsight, that the union intended to charge a violation of Article XXVII, which generally proscribes the "illegal use" of the union name. The international rule, unlike the local rule, provides simply that "discipline as herein defined" shall be imposed upon a member violating the rule. According to Article XVIII of the international rules, Section 1(a), discipline "shall include, without limitation, a fine, removal from office or job, disqualification to run for office, or suspension or expulsion from membership...." The union suspended the plaintiff pursuant to Article XXVII of the international constitution, and derived its punishment from Article XVIII of the same rules. This the union believed it could do pursuant to Article XIII, Section 10, of the local constitution, allowing freedom to the board to fashion an appropriate punishment "[i]n cases where no specific punishment is provided for [by] the Constitution or By-Laws."[3]

■ First of all, the Court *does* believe that the typographical error in the January 10 letter to Mr. Waring, and that letter's "request" that he appear before the board, led or could have led him to believe that the maximum penalty that could be meted out at the board meeting was a fine of $200. The typographical error made it unclear what provision of the international constitution, if any, was applicable to his behavior, and it would have taken a commendable degree of foresight for the plaintiff to have determined that his conduct might subject him to charges under the interna-

tional constitution of "illegal use of name." He was aware that he was charged under the local provision proscribing unauthorized representations to the press. But, taking into account the "typo," and in the absence of any description in the letter to Mr. Waring of the contents of any of the regulations cited, Mr. Waring could hardly have been expected to assume that he would also be charged under an international rule prohibiting conduct of a nature qualitatively different from unauthorized representations. Finally, Article XII, Rule 15A allows for suspension where a member fails to appear at a board meeting after having been "subpoenaed." The letter to Mr. Waring "requested" his presence, and did not give plaintiff adequate notice that his appearance was required.

Thus, the plaintiff was not afforded adequate notice of the charges against him or of the penalties that could be assessed, and his defense, including a possibly tactical decision not to appear, was not based upon accurate information and was prejudiced by the defendants' omissions and typographical error. Had he been aware that he was charged under Article XXVII of the international constitution, he might well have chosen to appear, not only because the penalties that could be assessed for a violation of this provision were severe, but also because evidence concerning his lack of intent to derive a profit from the use of the union name would have constituted a defense, at least with respect to Article XXVII, Section 1. (The *section* of the provision under which the plaintiff was ultimately convicted was never specified, before or after his conviction). Therefore, Mr. Waring could not have been disciplined at the executive board meeting, in keeping with due process, for a violation of Article

---

**3.** The defendants maintain that suspension was permitted under either this rule or under Article XII, Rule 15A, the latter allowing for suspension as a sanction for failure to appear at the executive board disciplinary hearing. As to the appropriateness of suspension under Article XXVII of the international constitution, that is dealt with in the text. With respect to Article XII, Rule 15A of the local constitution, it may

be true that the plaintiff *could* have been suspended pursuant to this provision, but it is patently clear that he *was not* suspended for failing to appear. According to the minutes of the executive board, the $50 fine was assessed for failure to appear. Defendant's Exhibit 4. These minutes make it clear that it was the dissemination of newspapers which led to the suspension.

XXVII of the international constitution. Yet in fact he not only was disciplined but was suspended under this rule. Nor could the plaintiff have been suspended for his absence from the meeting, considering the board's "request" that he appear. (In any event, the records make it clear that he was not suspended, but was fined $50, for this absence). "Fair play entitles an accused to rely on the written charges made against him in preparing his defense, limits the trial to proof in support of that charge, and bars his being found guilty of an offense with which he is not charged." *Allen, supra,* 338 F.2d at 315. Even if the plaintiff was guilty of a violation of Article XXVII of the international constitution, he was not validly convicted therefor, and he thus remained a member in good standing notwithstanding the vote of the board. The receiving in information of plaintiff's appeal on June 23 did not work to validate his illegal conviction.

■ The Court expresses no opinion with respect to the plaintiff's chances of success on his damages claims, although it is noted in passing that some of the behavior relating to the denial of due process as to plaintiff's initial suspension seems at most negligent. Nevertheless, the plaintiff is entitled to injunctive relief. Plaintiff has demonstrated the requisite serious injury and irreparable harm, and has convinced the Court of the merit of his contentions. The union will suffer only minimal harm from a delay in holding its election for treasurer until after Mr. Waring has a fair opportunity either to be disciplined in keeping with the mandates of due process or to be considered for nomination.

Local 1414 nominations are generally held in November. Elections are held in December, the newly elected officers taking office on January 1. It is hereby ORDERED that Local 1414 is PRELIMINARILY ENJOINED from holding its triennial election *for the position of treasurer* as originally scheduled. New nominations shall be held to determine candidates for election to this position. The rescheduled nomination meeting shall be held no sooner

than the third Monday in January. Elections shall be held in February and the new treasurer shall take office on March 1, 1987, and shall serve the remainder of the three year term which officially begins on January 1, 1987. The present treasurer of Local 1414 shall retain his position through February 28, 1987. If, between the date of this Order and the date of the rescheduled nomination, the union should elect to give Mr. Waring a full and fair hearing on charges under Article XXVII of the international constitution, it may do so. The union, however, must provide Mr. Waring a hearing that comports with the requirements of due process, and an expedited appeal to the membership must be allowed, if he is convicted, such appeal to be heard on a date prior to the date of the rescheduled nomination.

## ON MOTION TO DISSOLVE INJUNCTION

On January 16, 1986, the executive board of the International Longshoremen's Association, Local 1414, suspended plaintiff Lawrence Waring from membership in the local union organization for a period of one year. The plaintiff sought to appeal the decision of the executive board through internal procedures. After plaintiff had been "given the run-around" for several months, his appeal was finally put before the general membership of Local 1414 (in plaintiff's absence) on June 16, 1986. The appeal was "received in information" at the June 16 general meeting; this constituted a rejection of plaintiff's appeal. In preparation for union local elections that were planned for December, 1986, nominations for officers were held on November 10, 1986. Plaintiff was denied admittance to the meeting at which nominations were made. Nevertheless, he was nominated for the position of treasurer by another union member. Shortly thereafter, plaintiff was informed by the executive board that he was ineligible to run for office because, *inter alia,* his one-year suspension was still in effect. On December 2, 1986, plain-

tiff filed suit in the United States District Court for the Southern District of Georgia, seeking equitable relief and damages pursuant to the provisions of Title I of the Labor Management Reporting and Disclosure Act [LMRDA], 29 U.S.C. § 411, et seq.

On December 5, 1986, this Court entered a preliminary injunction, ordering that the election for the position of treasurer be postponed for approximately six weeks. While allowing elections for all other officer positions to proceed in December, as scheduled, this Court found that new nominations and a postponed election for the position of treasurer were warranted by union violations of the plaintiff's due process rights, guaranteed him by 29 U.S.C. § 411(a)(5). The six week period was intended to allow sufficient time for the union, if it so desires, to suspend the plaintiff from membership after a procedurally adequate hearing (thus disqualifying him from running for office), while affording plaintiff, should charges not be pressed or should the membership vote to reverse any decision of the executive board, the opportunity to run for the position of treasurer. Factual details concerning the instant dispute and the terms of the injunction can be found in the Court's Order of December 5.

In granting the plaintiff's prayer for injunctive relief, this Court did not consider the possibility that the suit might have been time-barred in light of the Supreme Court's holding in DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Defendants, pointing to the Eleventh Circuit's decision in Davis v. United Automobile, Aerospace & Agriculture Implement Workers, 765 F.2d 1510 (11th Cir.1985) (six month statute of limitations applies to suits brought under § 411), have filed a motion attacking the propriety of the Court's earlier Order, arguing in essence that plaintiff's action, which was filed some ten and one-half months after his suspension, should have been dismissed. Before the Court is the defendants' motion to dissolve injunction and to dismiss.

## DISCUSSION

■ It should be noted that a split has developed among the Circuits over the question whether a six-month period of limitations ought to be applied to suits such as the instant one. The courts that have found this limitations period inappropriate have pointed to the difference between the policy concerns served by short periods of limitation in suits involving labor/management disputes, and those policy concerns supported by allowing less restrictive periods for suits brought by a union member against his union under Title I of the LMRDA. Compare Doty v. Sewall, 784 F.2d 1 (1st Cir.1986) with Davis, supra. Even within this Circuit, where the six-month limitations period is applied broadly, it has been recognized that this limitations period is not applicable to all actions brought by union members under the LMRDA. See Erkins v. Bryan, 785 F.2d 1538 (11th Cir.1986) (doctrine of laches to be employed where union member seeks equitable accounting under § 501 and where claim is against neither union per se nor employer). In any event, notwithstanding that the plaintiff has sought, inter alia, equitable relief, the union is a named defendant. Thus, it seems apparent that, under the law of this circuit, the instant action is governed by the Davis decision, and that the federal six-month limitations period applies.

■ There is a further and for present purposes more important question, however, as to when the six-month period begins to run. Addressing this question without resolving it, the Davis court noted "a potential problem" that could arise from applying the six-month limitations period to suits brought under Title I of the LMRDA.

[S]ection 411(a) provides that a union member may be required to exhaust reasonable internal union procedures for up to four months before proceeding with a suit under § 412.... Thus, union members might be forced into a "Catch 22" situation in which they could be barred from suing the union if they wait to sue for more than six months while exhaust-

ing union remedies, but could be dismissed from federal court for failure to exhaust internal remedies if they file suit within the limitations period without seeking to exhaust....

Two possible solutions come to mind. First, the limitations period might be tolled during the time a union member is exhausting his union remedies.... Second, a court could require the filing of the lawsuit within six months, but stay the judicial proceedings pending completion of exhaustion of union remedies. *Cf. Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 465, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975) (suggesting that plaintiff might ask court to stay proceedings until administrative efforts completed)....

*Davis,* 765 F.2d at 1515 n. 13. Finding the latter solution less satisfactory than the first,[1] and taking into account the waste of judicial resources and plaintiffs' money that would result from forcing all union members to file suit for § 411 violations before exhaustion of internal remedies (and in light of the fact that such a requirement would contravene the federal policy against nonjudicial resolution of labor disputes, *see generally Adkins v. International Union of Electrical, Radio & Machine Workers,* 769 F.2d 330, 336 (6th Cir.1985)), the Court holds that so long as a union member is engaged in a good faith attempt to exhaust his internal remedies with respect to a § 411 claim, the six-month period of limitations is tolled. *See generally Frandsen v. Brotherhood of Railway, Airline &* *Steamship Clerks, etc.,* 782 F.2d 674 (7th Cir.1986).

Defendants in the case at bar apparently concede that the statutory limitation period on plaintiff's claims did not begin to run on the date that he was suspended from the union. Defendants claim, however, that for several reasons the plaintiff's cause of action "accrued" prior to June 2, 1986—or more than six months prior to the date of filing this lawsuit. On February 6, 1986, plaintiff informed the union's district president by letter that the plaintiff would take the dispute before the court if his claims were not resolved by the union within forty-five days. From this fact, defendants argue that plaintiff's cause of action accrued at the latest on March 23, forty-five days after the writing of the mentioned letter. Defendants further claim that plaintiff should have realized, whether on March 23 or some other date prior to June 2, 1986, that his efforts in pursuing internal remedies were futile, and that therefore the six-month period should be measured from the time the plaintiff should have so realized. The defendants contend finally that the cause of action accrued, at the latest, on the last date that the union could have raised a "failure to exhaust" defense to a § 411 claim—on May 16, 1986, four months after the plaintiff's initial suspension.[2]

■ The Court finds plaintiff's statement that he would take his claim to court at a certain time to be irrelevant to whether he was pursuing his internal remedies in good faith. Similarly, the Court cannot

---

**1.** The *Johnson* court held that the statute of limitations for § 1981 claims is not tolled while a plaintiff pursues administrative remedies under Title VII. The plaintiff's § 1981 claim, in *Johnson,* was found to be time-barred because of his failure to file suit within the applicable § 1981 limitations period. The court determined, *inter alia,* that had plaintiff wished to preserve his § 1981 claim, he could have sued under § 1981 while his claims were being reviewed by the EEOC, and asked the court to stay the § 1981 proceedings until the administrative review had been completed. The *Johnson* court emphasized that § 1981 and Title VII essentially offer a plaintiff a *choice* between two congressionally-created and independent administrative and judicial remedies, 421 U.S. 454, 95 S.Ct. 1716. It would seem to this Court that the *Johnson* reasoning does not easily lend itself to application where, as here, *one* federal cause of action has been created specifically for the purpose of correcting inequities *after* attempts to resolve grievances through the internal procedures of an organization have failed.

**2.** Section 411(a)(4) allows a court, in its discretion, to require that a plaintiff exhaust internal union procedures before bringing suit. The court may not require the plaintiff to seek redress through internal channels for more than a four-month period.

conclude, as the defendants suggest, that plaintiff should have realized, at the end of this forty-five day period, the futility of further pursuing internal union procedures. It is clear that his letter to the district president did, eventually, yield results, and that because of his persistence the plaintiff did manage to have his appeal heard, albeit unsuccessfully, by the membership on June 16, 1986.

The *Frandsen* case, *supra,* indicates the weakness in defendants' argument that the period began to run at the point in time (whatever the date) that plaintiff should have realized the futility of intra-union efforts. In *Frandsen,* the court recognized that the "futility exception" to the exhaustion of internal remedies rule in suits brought under § 301, *see Clayton v. UAW,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981), was designed to benefit union workers. Thus, the *Frandsen* court found that it would be improper to apply this exception in a manner contrary to the interests of employees, or to find that the six-month *DelCostello* limitations period must begin to run at such time as an employee should realize the futility of his internal efforts at conciliation. Moreover, as noted, *supra,* it does not appear to the Court that there was any reason for the plaintiff to assume that his efforts would be futile before June 16. (Nor could the plaintiff be said to have completely exhausted his internal remedies until that date at the earliest).

■ As to defendants' argument that plaintiff's claim accrued, or that the six-month limitations period began to run, four months after the date of his suspension, the Court notes that § 411's mandate, that a court not force a plaintiff to exhaust internal procedures for more than four months, like the futility exception discussed in *Frandsen,* is intended to work for *the benefit of the employee.* The Court doubts that the statutory language of § 411 was intended, or that it now should be read, to require all union members encountering a lengthy internal procedure to rush to the courthouse four months after the occurrence of the complained-of act. As the plaintiff has stated, thus to interpret the statute would "open the floodgates of litigation at the conclusion of the statutory four-month period, no matter how close the parties may be to resolving any grievance" through internal union procedures. *Plaintiff's Response to Defendants' Motion to Dissolve Injunction and to Dismiss* at 7. *See generally Frandsen, supra,* 782 F.2d at 681–83. The defendants argue that the interpretation suggested by the plaintiff (and adopted by this Court) will have the effect of tolling the six-month limitations period for as long as a union member "keep[s] writing letters." Such an argument may have some force where it is apparent from the record of any given case that the union member has not pursued his remedies diligently and in good faith. The facts of this case, however, indicate that Mr. Waring persistently sought to resolve his dispute through union channels. Such efforts should be encouraged. In light of the federal policy favoring judicial noninterference *and* recognizing the increase in the courts' docket that would result from an interpretation different from that adopted here, the Court holds that it was, at the earliest, on June 16, 1986, the date that Waring's appeal was finally denied by the membership, that the six-month period of limitations began to run. Consequently, the suit was not time-barred.

■ The Court must address briefly the defendants' alternative argument, that the injunctive relief granted the plaintiff constituted impermissible interference with an ongoing union election. *See generally Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley,* 467 U.S. 526, 104 S.Ct. 2557, 81 L.Ed.2d 457 (1984); *Bishop v. Duval,* 592 F.Supp. 16 (S.D.N.Y.1984). Both of the above-cited cases, in which interference was deemed inappropriate, involved situations where a union election was actually underway; ballots had been distributed, and significant court interference or supervision was requested. Such facts have little in common

with those of the case at bar. Moreover, as the Court noted in *Crowley:*

> If the remedy sought is invalidation of the election already being conducted with court supervision of a new election, then union members must utilize the remedies provided by Title IV [of the LMRDA]. For less intrusive remedies sought during an election, however, a district court retains authority to order appropriate relief under Title I.

467 U.S. at 550, 104 S.Ct. at 2571. Thus, even where an election is in progress, a court has discretion to order certain relief. It is by no means clear, of course, that an election is "being conducted" at the post-nomination/pre-election stage; thus, it is an open question whether *Crowley* has any bearing whatsoever on the instant case. Even if *Crowley* does apply, it should be noted that this Court has not the slightest desire to supervise, or otherwise question the procedural adequacy of, Local 1414's elections. The injunctive relief granted by the Court, in fact, is minimally intrusive. The six-week delay ordered works no injustice upon the union: the union is free to suspend the plaintiff, in a proper proceeding, during the coming weeks and thus to disqualify him from running for office. At the same time, the injunction protects the due process rights of the plaintiff that were earlier violated by the union. Should no valid suspension be imposed, or should a valid suspension be overturned by the membership, the plaintiff will be free to run for the position of treasurer. The remedy is appropriate and in no way objectionable.

For the reasons stated, the motion to dissolve injunction and to dismiss is DENIED.