**G.P. REED, Plaintiff,**

**v.**

**UNITED TRANSPORTATION UNION, Fred A. Hardin, K.R. Moore, and J.L. McKinney, Defendants.**

**No. C–C–85–477–P.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

May 1, 1986.

John W. Gresham, Ferguson, Watt, Wallas & Adkins, Charlotte, N.C., for plaintiff.

Clinton J. Miller, III, Asst. Gen. Counsel, United Transp. Union, Cleveland, Ohio, J. David James, Jonathan R. Harkavy, Smith, Patterson, Follin, Curtis, James & Harkavy Greensboro, N.C., for defendants.

## ORDER

ROBERT D. POTTER, Chief Judge.

THIS MATTER was heard before the undersigned on January 31, 1986 in Charlotte, North Carolina on the Defendants' Motion to dismiss or for summary judgment. The Defendants were represented by Clinton J. Miller and J. David Jones, Attorneys at Law. The Plaintiff was rep-

resented by John W. Gresham, Attorney at Law.

The Plaintiff, G.P. Reed, is the Secretary/Treasurer of Local 1715 of the Defendant United Transportation Union, which is a labor organization within the meaning of 29 U.S.C. § 401 *et seq.* In August 1982, Defendant Fred A. Hardin, President of the Union, sent Defendant J.L. McKinney, International Auditor of the Union, to Charlotte, North Carolina to audit the books and records of Local 1715. The audit was prompted by a letter to Defendant Hardin from a member of Local 1715 regarding his concerns about the financial stability and future of the Local. As a result of the audit, Defendant McKinney disallowed checks paid by the Local to the Plaintiff for "time lost" in the amount of $1,210.20.

The Plaintiff paid the amount disallowed, but appealed Defendant McKinney's findings to Defendant Hardin by way of a letter dated September 6, 1982. The Plaintiff claimed that the repayment of the $1,210.20 was demanded on the ground that he was required to get approval for reimbursement for "time lost" to do various tasks *before* "losing" the time and doing the work. He further claimed that no such prior approval requirement had existed or been enforced before its application to him.

Defendant Hardin denied the Plaintiff's appeal in a letter dated October 1, 1982. Hardin explained that when a local officer is salaried, his regular salary is meant to cover the responsibilities of his office. He noted that the payments that were disallowed had been claimed for the performance of ordinary duties and responsibilities of his office.

The Plaintiff subsequently sought to enforce the "prior approval" policy he claims had been applied to him when Local President Fred Warlick and another Local officer requested reimbursement for time spent on Local 1715 business for which the Local had not given prior approval. Defendant Hardin, however, ordered the Plaintiff to pay those claims.

On June 28, 1983, the Plaintiff met with Defendant K.R. Moore, Vice President of the Union, to determine whether the Union planned to continue to enforce dual policies with respect to expense payments by denying his appeal for reimbursement. The Plaintiff claims that Defendant Moore refused to discuss the matter.

On July 1, 1983, the Plaintiff's attorney wrote to Defendant Hardin complaining about the $1,210.20 repayment the Plaintiff was required to make to the Union after the audit as a result of the different standards allegedly applied to the Plaintiff and other Union members with regard to payment of Union expenses. He asserted that the heart of the conflict involved Local President Warlick's actions to harass the Plaintiff for not supporting his views, and that if the Union supported Warlick in those efforts, it would be in violation of 29 U.S.C. § 411.

On July 22, 1983, Defendant Hardin responded to the Plaintiff's attorney, stating that the issue concerning the time disallowed as a result of the audit had been considered closed once the Plaintiff had made his repayment to the Union.

On August 2, 1983, the Plaintiff's attorney sent Defendant Hardin another letter, in which he reported that he had advised the Plaintiff of Hardin's response concerning his request for reimbursement. He also informed Defendant Hardin that he had advised the Plaintiff "to commence litigation on or about September 15, 1983, unless the Union has properly reviewed and reconciled this matter." Letter dated August 2, 1983 from John Gresham, Esq. to Union President Hardin.

The Plaintiff filed this action on August 2, 1985, exactly two years after his attorney's last letter to Defendant Hardin. In his Complaint, the Plaintiff raises claims under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* ("LMRDA") as well as pendent state implied contract and quantum meruit claims. Specifically, the Plaintiff claims that the Defendants have violated the Plaintiff's

rights to freedom of speech and assembly as a union member as well as his right to be safeguarded from improper disciplinary action under Title I of the LMRDA, 29 U.S.C. § 411 et seq.[1] He claims that the selective application of the "prior approval" policy to disallow his claims was meant to punish him for speaking out against Local President Warlick, whose claims for reimbursement were not denied despite his failure to obtain prior approval for his "time lost." He also claims that the Defendants have not properly exercised their fiduciary duties as officers of the Union pursuant to Title V of the LMRDA, 29 U.S.C. § 501.[2]

Whether the Court may entertain the Plaintiff's claim under § 411 of Title I of the LMRDA depends on whether that claim has been brought in a timely fashion. Because Congress has not explicitly provided a limitations period for such claims, the Court must "borrow" the most appropriate statute of limitations from some other source.

The last Fourth Circuit case to address the issue of what statute of limitations to apply to a claim under § 411 of the LMRDA was *Howard v. Aluminum Work-ers International Union,* 589 F.2d 771 (4th Cir.1978). In *Howard,* the Fourth Circuit noted that courts "have found that denial of free speech is similar to a personal injury under state law and have applied tort limitations statutes to such claims." *Id.* at 774. Accordingly, the Court determined that Virginia's two-year statute of limitations for personal injury claims should apply to the Plaintiff's claim that his union had abridged his right of free speech guaranteed by Title I of the LMRDA.

Since *Howard* represents the Fourth Circuit's last word on the appropriate limitations period for actions brought under Title I of the LMRDA, the Plaintiff contends that this Court is bound to apply North Carolina's three-year statute of limitations for personal injury actions. The Defendant, on the other hand, relies on the Supreme Court's more recent opinion in *Del-Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), and its progeny and argues that the Court should apply the six-month limitations period of Section 10(b) of the National Labor Relations Act

1. The relevant text of § 411 provides:
   (2) **Freedom of speech and assembly.** Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
   (5) **Safeguards against improper disciplinary action.** No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(2), (a)(5).

2. The relevant text of § 501 provides:
   (a) **Duties of officers; exculpatory provisions and resolutions void.** The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization.
   29 U.S.C. § 501(a).

for unfair labor practices charges to the Plaintiff's LMRDA Title I claim.

The task before the Court in *DelCostello* was the selection of an appropriate statute of limitations for a "hybrid" action combining (1) a union member's claim against his employer under § 301 of the Labor Management Relations Act for violation of a collective bargaining agreement, and (2) his claim against his union for breach of its implied duty of fair representation in its handling of his grievance against the employer. The Court stated at the outset of its opinion that it has "generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law" when federal law fails to provide explicitly for a limitations period for a federal action. *Id.* at 158, 103 S.Ct. at 2287. The Court noted, however, that "[i]n some circumstances, ... state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law. In those instances, it may be inappropriate to conclude that Congress would choose to adopt state rules at odds with the purpose or operation of federal substantive law." *Id.* at 172, 103 S.Ct. at 2294.

The Court proceeded to reject the state statutes of limitations suggested by the parties because they provided imprecise analogies to the claims in the hybrid action and failed to accomodate the policy considerations underlying the hybrid action. The Court found the usual ninety-day statute of limitations for the vacation of arbitration awards to be too short to provide an employee with a "satisfactory opportunity to vindicate his rights under § 301 and the fair representation doctrine." *Id.* at 166, 103 S.Ct. at 166. On the other hand, the Court determined malpractice limitations periods, varying from three years to ten years, to be too long in light of the strong federal interest in speedy resolution of suits involving the grievance and arbitration procedures of a collective bargaining agreement. *Id.* at 168–69, 103 S.Ct. at 2292–93. The Court adopted instead the six-month limitations period of § 10(b) of the National Labor Relations Act, "a feder-

al statute of limitations actually designed to accomodate a balance of interests very similar to those at stake here—a statute that is, in fact, an analogy to the present lawsuit more apt than any of the suggested state-law parallels." *Id.* at 169, 103 S.Ct. at 2293.

In deciding to apply § 10(b)'s six-month period to the hybrid action, the Court first noted that a "substantial overlap" often exists between claims against a union for breach of its duty of fair representation, against an employer for breach of a collective bargaining agreement, and unfair labor practice charges. It found that "fair representation claims are allegations of unfair, arbitrary, or discriminatory treatment of workers by unions—as are virtually all unfair labor practice charges made by workers against unions." *Id.* at 170, 103 S.Ct. at 2293. It further stated that "it may be the case that alleged violations by an employer of a collective bargaining agreement will also amount to unfair labor practices." *Id.*

Even more important to the Court in its decision to adopt § 10(b)'s limitations period was the close similarity of the policy considerations relevant to the choice of a limitations period for unfair labor practice charges and for hybrid § 301/fair representation actions. The Court observed:

"In § 10(b) of the NLRA, Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system. That is precisely the balance at issue in this case. The employee's interest in setting aside the 'final and binding' determination of a grievance through the method established by the collective-bargaining agreement unquestionably implicates 'those consensual processes that federal labor law is chiefly designed to promote—the formation of the.... agreement and the private set-

tlement of disputes under it.' *Hoosier,* 383 U.S. at 702 [86 S.Ct. at 1111]. Accordingly, 'the need for uniformity' among procedures followed for similar claims, *ibid.,* as well as the clear congressional indication of the proper balance between the interests at stake, counsels the adaptation of § 10(b) of the NLRA as the appropriate limitations period for [hybrid § 301/fair representation lawsuits]." *Id.* at 171, 103 S.Ct. at 2294 (quoting *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 70–71, 101 S.Ct. 1559, 1567–68, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring)).

The Supreme Court did not, however, intend to create an all-embracing new rule to be applied whenever an action involving a labor dispute lacks a congressionally enacted statute of limitations. The Court stressed that

> our holding today should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy. *See, e.g., Mitchell,* 451 U.S., at 61, n. 3 [101 S.Ct., at 1563, n. 3]. On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods.

*DelCostello,* 462 U.S. at 171, 103 S.Ct. at 2294.

Consistent with this cautionary language, the Supreme Court in *DelCostello* did not disturb its holding in *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), that the six-year state statute of limitations governing contracts should be applied to an action under a collective bargaining agreement brought by a union against an employer. The Court noted that in *Hoosier* it had resisted the suggestion to establish a uniform federal period of limitations for

such lawsuits despite its recognition that suits involving labor-management relations ordinarily call for uniform law. The *DelCostello* Court explained its decision in *Hoosier* by stating:

> [W]e reasoned that national uniformity is of less importance when the case does not involve "those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it," 383 U.S., at 702 [86 S.Ct., at 111]. We also relied heavily on the obvious and close analogy between this variety of § 301 suit and an ordinary breach-of-contract case.

*DelCostello,* 462 U.S. at 163, 103 S.Ct. at 2289.

Since *DelCostello,* the circuits have split on the issue whether § 10(b)'s six-month limitations period should be extended to a union member's LMRDA Title I claims against his union. The Sixth and Seventh Circuits have determined in a conclusory fashion that the factors guiding the Supreme Court's choice of a limitations period for the hybrid action in *DelCostello* apply with equal force in the context of an LMRDA claim and, therefore, subjected the LMRDA claims before them to the same six-month limit. *See Adkins v. Electrical Workers,* 769 F.2d 330, 335 (6th Cir.1985); *Vallone v. Local Union No. 705, International Brotherhood of Teamsters,* 755 F.2d 520, 521–22 (7th Cir.1984).

The Third Circuit reached the same conclusion after a more detailed analysis in *Local Union 1397 v. United Steelworkers,* 748 F.2d 180 (3rd Cir.1984). Following the analysis used in *DelCostello,* the Court first found that Title I of the LMRDA and the NLRA provisions governing unfair labor practices bear a "family resemblance" since they "are both addressed to the same basic concern: the protection of individual workers from arbitrary actions by unions …." *Id.* at 183.

It was the perceived similarity in policy considerations underlying the choice of a limitations period for LMRDA claims and unfair labor practice charges, however,

that convinced the Third Circuit to apply § 10(b)'s six-month period. The Court found that, while a union member needs sufficient time to vindicate his rights under the LMRDA, "rapid resolution of internal union disputes is necessary to maintain the federal goal of stable bargaining relationships, for dissension within a union naturally affects that union's activities and effectiveness in the collective bargaining arena." *Id.* at 184.

As a final point, the Third Circuit expressed its opinion that a six-month limitations period for LMRDA claims would not be inherently unfair to union members. It noted that LMRDA Title I violations are rarely latent, and thus the aggrieved union member should be able to decide whether to sue within six months of the time the cause of action arises. The Court believed in essence that if the Supreme Court thought six months was enough time for filing a § 301 claim, the imposition of a six-month limit for filing an LMRDA claim would likewise be fair. *Id.*

Although ultimately adopting the result reached by the Third Circuit in *Local Union 1397*, the Eleventh Circuit in *Davis v. United Automobile Aerospace, and Agriculture Implement Workers*, 765 F.2d 1510 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1284, 89 L.Ed.2d 592 (1986), revealed certain weaknesses in the Third Circuit's reasoning. With regard to the adequacy of a six-month period for filing an LMRDA Title I claim, the Eleventh Circuit noted a potential practical problem that could preclude the aggrieved union member from perfecting his LMRDA claim. The Court explained:

> A cause of action under section 411 accrues when the plaintiff union member discovers, or in the exercise of reasonable diligence should have discovered, the act constituting the alleged violations, at which time the statute of limitations begins to run. However, section 411(a)(4) provides that a union member may be required to exhaust reasonable internal union procedures for up to four months before proceeding with a suit

under section 412. Thus, union members might be forced into a "Catch-22" situation in which they could be barred from suing the union if they wait to sue for more than six months while exhausting union remedies, but could be dismissed from federal court for failure to exhaust internal remedies if they file suit within the limitations period without seeking to exhaust.

*Id.* at 1515 n. 13.

More significant to the issue whether the reasoning of *DelCostello* compels application of § 10(b)'s limitations period to LMRDA Title I claims is the Court's rejection of the Third Circuit's conclusion that rapid resolution of a union member's LMRDA grievance against his union is necessary to maintain the federal goal of stable bargaining relationships. The Court found that the link between dissension within a union and the union's effectiveness in the collective bargaining arena "appears rather tenuous in the situation of a single dispute between an individual union member and the union." *Id.* at 1514 n. 11. Indeed, the Court flatly disagreed with the Third Circuit's appraisal that the same policy considerations underlying the choice of a statute of limitations for unfair labor practices are present in an LMRDA Title I suit. The Court stated:

> [W]e note an important distinction between the present action and a hybrid § 301/fair representation claim as was alleged in *DelCostello.*
>
> . . . .
>
> The present action, alleging a violation of statutorily-protected free speech, involves a different balance of interests [than did the hybrid action in *DelCostello* ]. First, an action alleging a violation of 29 U.S.C. § 411 is brought only against the union; the employer is not involved. Therefore, the national interests in stable labor-management bargaining relationships and the speedy, final resolution of disputes under a collective bargaining agreement are not implicated. Accordingly, the need for national uniformity in the application of limitation

periods to such an action is not as great. *See DelCostello*, 103 S.Ct. at 2289; *Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 702, 86 S.Ct. 1107, 1111, 16 L.Ed.2d 192 (1966). Furthermore, a union member's interest in protection against the infringement of his rights of free speech rises to a national interest, as embodied in section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2), and thus seems of greater importance than an employee's interest in setting aside an individual settlement under a collective bargaining agreement.

*Id.* at 1514 (footnote omitted).

Despite its recognition of these policy arguments against extending § 10(b)'s six-month limitations period to LMRDA Title I claims, the Eleventh Circuit felt "constrained by the rationale of *DelCostello* and the holdings of our sister circuits to reach the same conclusion in the present case." *Id.* The Court stated that it felt bound by the fact that the Supreme Court had found a strong connection between the national interest in labor peace and the necessity for a short time period in which to bring an action based on a labor union's implied duty of fair representation to find a similar connection between labor peace and an action based on a union's alleged mistreatment of its members under Title I of the LMRDA. *Id.*

It is true that the Supreme Court in *DelCostello* identified the federal policy in favor of "relatively rapid final resolution of labor disputes" as a reason for rejecting the suggested three- to nine-year malpractice statute of limitations for the fair representation claim against the union. *DelCostello*, 462 U.S. at 168, 103 S.Ct. at 2292. This Court notes, however, that what the Supreme Court may consider "relatively rapid" in one type of labor dispute may be different from what may satisfy that policy in another context. In *DelCostello*, the Court mentioned the "rapid resolution" policy in the context of its discussion of the need for speedy and final resolution of disputes that may involve the interpretation of critical terms in the collective bar-

gaining agreement affecting the entire relationship between company and union. *Id.* at 169, 103 S.Ct. at 2293. In *Auto Workers v. Hoosier, supra,* however, the Court specifically found that the federal goal of "relatively rapid disposition of labor disputes" suggested by § 10(b)'s six month provision would be satisfied by application of a *six-year* statute of limitations in the context of a § 301 action by a union against an employer for a straightforward breach of a collective bargaining agreement. *Hoosier,* 383 U.S. at 707, 86 S.Ct. at 1114. In any event, this Court does not agree with the Eleventh Circuit's sudden conclusion that the Supreme Court's concern over the speedy resolution of the fair representation claim in *DelCostello* automatically mandates as speedy a resolution when the suit is based on a dispute under Title I of the LMRDA.

The First Circuit recently issued a thorough and well reasoned opinion in *Doty v. Sewall,* 784 F.2d 1 (1st Cir.1986), in which it refused to follow its sister circuits in their extension of the result in *DelCostello* to actions brought solely against a union for a violation of Title I of the LMRDA. After examining the reasoning and cautionary language of *DelCostello,* the Court "dr[e]w the clear conclusion that *DelCostello* is not the kind of precedent that lends itself as a springboard for easy application to other rights, statutes and policies. Rather, it is a closely reasoned exception to a general rule which illumines a rather narrow path." *Id.* at 6. It further stated that its

> own scrutiny of the interests and policies at stake in this [LMRDA Title I] case convinces us that they so differ from those in *DelCostello* that its underlying approach mandates adherence in this case to the normal mode of applying "the most closely analogous statute of limitations under state law." 462 U.S. at 158, 103 S.Ct. at 2287.

*Id.* at 2.

Specifically, the First Circuit found from the legislative history of the LMRDA that Title I, which was designated a "bill of

rights" akin to that in our federal constitution, was enacted to protect a union member's civil and political rights as opposed to his economic rights. Thus, whereas the labor-management relationship is the core of the NLRA and the hybrid § 301/fair representation claim, the individual's interest in internal union democracy is at the heart of Title I of the LMRDA. The Court drew from the legislative history "the sense that claims under Title I's bill of rights provisions were viewed primarily as civil rights matters rather than as labor matters." *Id.* at 8. It, therefore, believed that deriving a statute of limitations for pure Title I LMRDA claims from a state statute governing civil rights actions would be more logical than borrowing one from an unfair labor practices statute. *Accord McQueen v. MaGuire,* No. 82 Civ. 8445 (PNL), Slip Op. (S.D.N.Y. March 11, 1986) [Available on WESTLAW, DCTU database]; *Bernard v. Delivery Drivers,* 587 F.Supp. 524 (D.Colo.1984).

Like the Eleventh Circuit, the First Circuit also determined that an LMRDA bill of rights claim does not implicate the same underlying policy concerns found in *DelCostello.* Such a claim cannot be asserted against an employer; does not challenge the stable bargaining relationship between the union and the employer; and does not affect the interpretation of a collective bargaining agreement. In addition, when a union member is suing only for breach of his "civil rights" under Title I of the LMRDA, there is no attack on a private settlement under a collective bargaining agreement. The Court thus concluded that "the interests served by a rather short statute of limitations in *DelCostello,* stable labor-management relationships and finality in privately grieved and arbitrated settlements, are virtually, if not entirely, absent in the case at bar." *Id.* at 7.

In contrast, the Court found that the interest of the union member is "qualitatively enhanced" in an LMRDA Title I case. The rights asserted in a Title I case were created by Congress in a specific statute modeled after the federal Bill of Rights. *Id.* at 7; *see also United Steelworkers v.*

*Sadlowski,* 457 U.S. 102, 108–11, 102 S.Ct. 2339, 2343, 2345, 72 L.Ed.2d 707 (1982). Thus, the union member's interest represents a national policy. The Court noted that there are no such specifically identified rights in a hybrid claim. Furthermore, the Court found that the objective of Title I is to increase union democracy, whereas "the objective sought in the typical hybrid case is a purely personal victory in the form of restoration of job, pay, or promotion." *Id.* at 9. The Court concluded that the "sorts of interests protected by the LMRDA make it inappropriate to limit suits under that act without a compelling reason." *Id.* at 9. *Accord McQueen v. MaGuire,* No. 82 Civ. 8445 (PNL), Slip Op. (S.D.N.Y. March 11, 1986) ("a very short limitations period [for LMRDA bill of rights claims] would be justified only in the face of an overwhelming national interest in speedy resolution of the suit"); *Rodonich v. House Wreckers Union Local 95,* 624 F.Supp. 678, 682 (S.D.N.Y.1985) ("Although the rapid resolution of labor disputes serves an important national policy, its urgency is not so great when the result of applying the six-month statute might be to thwart the Congressional purpose in enacting the LMRDA, which was to provide union members with a 'bill of rights.' "); *Rector v. Local Union No. 10,* 625 F.Supp. 174, 178, 179 (D.Md.1985) ("The importance of [a union member's "bill of rights"] in our legal system should lead us to give union members every opportunity to vindicate those rights, instead of searching out a short period of limitations.... Federal labor law should not be procedurally determined to resolve LMRDA claims quickly in a vain attempt to protect unions from diversity. Congress had precisely the opposite intent in mind when it wrote the LMRDA.")

The Second Circuit's interpretation of the reach of *DelCostello* also advises against adopting § 10(b)'s six-month limitations period for LMRDA Title I claims. While arguing that *DelCostello* need not be narrowly construed to apply only to claims identical to those in *DelCostello,* the Sec-

ond Circuit in *Robinson v. Pan American World Airways, Inc.,* 777 F.2d 84 (2d Cir. 1985), adhered to its earlier view expressed in *Monarch Long Beach Corp. v. Soft Drink Workers Local 812,* 762 F.2d 228 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 569, 88 L.Ed.2d 554 (1985), that *DelCostello* is inapplicable to actions which do not involve an immediate and direct impact on labor-management relations. It stated that in determining whether *DelCostello* should be applied in a labor-related matter, "the key question is whether the dispute arises out of a labor-management relationship in which uniform and speedy settlement is highly desireable." *Id.* at 89.

Obviously, a union member's LMRDA Title I claim does not arise out of a labor-management relationship, but rather out of the union member's relationship with his union. It impacts only tangentially, if at all, on the union's bargaining relationship with the employer. Further, the Supreme Court noted in *DelCostello* that national uniformity is of less importance when the case does not involve " 'those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective bargaining agreement and the private settlement of disputes under it.' " *DelCostello, supra,* 462 U.S. at 162–63, 103 S.Ct. at 2289–90 (quoting *Hoosier,* 383 U.S. at 702, 86 S.Ct. at 1111). A Title I LMRDA suit such as the one presently before this Court does not implicate "those consensual processes," so application of a uniform federal limitations period is not as crucial a concern as it was in *DelCostello.*

██ The Court further believes that the Eleventh and First Circuits have aptly demonstrated that LMRDA Title I actions do not involve the same policy considerations that compelled the Court to adopt a rather short limitations period in *DelCostello.* Finally, the Court agrees with the First Circuit that an LMRDA Title I claim more closely resembles a civil rights claim than an unfair labor practice charge and that it is, therefore, more appropriate to borrow a statute of limitations applicable to a civil rights action than one that governs unfair labor practice charges.

██ Thus, having reviewed the precedents from other circuits on the propriety of extending *DelCostello* to actions based on a union member's LMRDA Title I claim against his union, the Court is of the opinion that the sounder position is to decline to apply § 10(b)'s six-month limitations period to the Plaintiff's LMRDA Title I claim. Instead, the Court will apply North Carolina's three-year limitations period for personal injury actions under N.C. Gen. Stat. § 1–52, since that statute would apply to a federal civil rights action. *See Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (state statutes of limitations for personal injury actions should apply to federal civil rights actions). This result is in accord with the Fourth Circuit's pre-*DelCostello* disposition of the LMRDA statute of limitations problem in *Howard v. Aluminum Workers International Union and Local,* 589 F.2d 771, 774 (4th Cir.1978). Thus, the Plaintiff's LMRDA Title I claim should not be dismissed as untimely, since he filed it within three years of the time the cause of action arose.

Because the circuits are divided on this statute of limitations issue, however, the Court recognizes that there is substantial ground for difference of opinion with its ruling on the timeliness of the Plaintiff's LMRDA Title I claim. Since the resolution of the limitations issue involves a controlling question of law which could dispose of the Plaintiff's LMRDA Title I claim, an immediate appeal may materially advance the ultimate termination of the litigation of that claim. Therefore, the Defendants are entitled to apply to the Fourth Circuit Court of Appeals for an interlocutory appeal of this ruling within ten days of the entry of this Order pursuant to 28 U.S.C. § 1292(b).

██ Since the Court has determined that the Plaintiff's LMRDA Title I claim should not be dismissed as untimely, it must consider the Defendants' alternative argument that the claim should be dismissed because the Plaintiff failed to exhaust his internal

union remedies pursuant to 29 U.S.C. § 411(a)(4).[3] The Defendants argue that President Hardin's unfavorable response to the Plaintiff's request for reimbursement could have been appealed to the Board of Directors of the Union pursuant to Article 75, II of the Union Constitution if the Plaintiff had not procrastinated in asserting his claims. That article of the Union Constitution provides:

A member or subordinate body may appeal to the Board of Directors from an interpretation of this Constitution made by the International President, provided such appeal is filed with the General Secretary and Treasurer within ninety (90) days from the date the decision by the International President was made.

UTU Constitution, Article 75, II.

The Plaintiff contends that Article 75, II does not apply in this case since it covers only appeals from the President's interpretation of the Union's Constitution. The Plaintiff has never sought an interpretation of the Constitution from President Hardin. Since the claim involves matters of internal regulation and not matters of constitutional interpretation, the Court finds that the Plaintiff did not have a right to appeal President Hardin's decision under the provision cited by the Defendants. As the Defendants have shown the Court no other internal remedies that were available to the Plaintiff, there appears to be no valid basis for their argument for dismissal because of failure to exhaust union remedies.

The Defendants also seek dismissal of the Plaintiff's claim under Title V of the LMRDA, 29 U.S.C. § 501, for failure to state a claim upon which relief may be granted. The Defendant contends that the Plaintiff cannot allege or prove that they did anything other than hold the Union's money and property solely for the benefit of the organization as required by § 501(a)

in making the Plaintiff reimburse the Local's treasury $1,210.20, the amount disallowed as a result of the audit. Indeed, the Defendants contend that they might have been dangerously close to failing to comply fully with the spirit of § 501(a) had they not required such reimbursement after the membership complaint and audit.

■ The Court notes initially that the Plaintiff's Complaint does not state a claim under § 501 against the Defendant Union. That section provides for an action to be taken against an "officer, agent, shop steward, or representative of any labor organization." 29 U.S.C. § 501(b). It does not provide for suit against the labor organization itself. *Stelling v. International Brotherhood of Electrical Workers*, 587 F.2d 1379, 1386 n. 6 (9th Cir.1978); *Pignotti v. Local # 3, Sheet Metal Workers' International Association*, 477 F.2d 825, 832 (8th Cir.), *cert. denied*, 414 U.S. 1067, 94 S.Ct. 576, 38 L.Ed.2d 472 (1973).

■ While § 501(a) provides the substantive basis for a claim based on a union officer's breach of his fiduciary duties, § 501(b) sets forth the procedural requirements that must be met before a union member may maintain an action for a violation of § 501(a). Specifically, § 501(b) provides:

When any officer, agent, shop steward or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or[4] recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the

---

**3.** 29 U.S.C. § 411(a)(4) provides:
No labor organization shall limit the right of any member thereof to institute an action in any court.... Provided, that any such member be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, be-

fore instituting legal ... proceedings against such organizations or any officer thereof....

**4.** The "or" has been consistently construed to mean "to." *Dinko v. Wall*, 531 F.2d 68, 72 n. 4 (2d Cir.1976).

United States ... to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of court obtained upon verified application and for good cause shown, which application may be made ex parte.

29 U.S.C. § 501(b). Thus, the Plaintiff must meet two statutory condition precedents before he may maintain his action against the Defendants: (1) the Plaintiff must have unsuccessfully demanded that the union or its governing board or officers bring the action; and (2) the Plaintiff must secure court permission to bring the action by filing a verified application with the court showing good cause. Further, the Plaintiff must be seeking relief on behalf of the union rather than on his own behalf. Because § 501(b) extends the jurisdiction of federal courts, its requirements are to be narrowly construed "so as not to reach beyond the limits intended by Congress." *Phillips v. Osborne*, 403 F.2d 826, 828 (9th Cir.1968).

■ In his Complaint, the Plaintiff alleges that he "appealed the rejection of his [lost time] claims to defendant Hardin who rejected the appeal," that he "sought to further appeal the rejection of his claim through defendant Moore," and that "the appeal was denied with no explanation." Complaint ¶¶ 9, 10. These allegations show that the Plaintiff brought his personal grievance regarding his reimbursement to the attention of Hardin and Moore, but they hardly establish a demand that an action be brought to cure alleged breaches of fiduciary obligations by Hardin, Moore, and McKinney. "Failure to allege that the required request has been made has been held to require denial of leave to file the complaint." *Flaherty v. Warehousemen, Garage & Service Station Employees' Local Union No. 334*, 574 F.2d 484, 487 (9th Cir.1978). Even if the Court were to consider the letters to President Hardin from the Plaintiff's attorney, which were filed with the Court by the Defendants in support of their Motion to dismiss, it would still reach the same conclusion that the Plaintiff failed to meet the demand requirement of § 501(b). *See Agola v. Hagner*, 556 F.Supp. 296, 301 (E.D.N.Y.1982) (union members' letter to union demanding support of union during strike, notifying union that strike benefits were behind in payment and had apparently been ceased, and threatening to institute legal action should union not respond and give its support by a certain date held insufficient to satisfy demand requirement of § 501(b)).

In the present case, the Plaintiff has never requested leave of court to file his Complaint as required by § 501(b). The "leave of court" requirement is designed to protect union officials from harassing, vexatious litigation. *Morrissey v. Curran*, 423 F.2d 393 (2d Cir.1970). The Complaint that was filed was not verified, so it cannot even be treated as a proper application for leave of court to proceed with the suit. The Plaintiff did file an affidavit in response to the Defendants' Motion to dismiss or for summary judgment over five months after he filed his Complaint. That affidavit, however, does not include sufficient allegations that he demanded that an action be brought against the present Defendants for breaches of their fiduciary obligations to the organization.

Most significantly, the Plaintiff's Complaint is defective in that it does not seek relief "for the benefit of the labor organization." 29 U.S.C. § 501(b). As noted by the Ninth Circuit in *Phillips v. Osborne*, 403 F.2d 826, 831 (9th Cir.1968), Congress apparently turned to the concept of the shareholders' derivative suit when designing the procedures by which union members could fulfill their "policing functions" within their labor organization. The Ninth Circuit elaborated on the nature of such a suit by stating:

The basic principle of the derivative suit is that the duties allegedly violated by corporate officers are owed to the organization and only secondarily or derivatively to the shareholder as representative of all shareholders.

. . . .

In the derivative context, a necessary corollary of the principle that the duties of officers are owed to the organization is that any relief obtained by the plaintiff in such litigation shall benefit the corporation as a whole and not the suing individual directly. Correspondingly, Section 501(b) makes it clear that relief granted under Section 501 is for the benefit of the real party in interest, the union whose officers are charged with dereliction.

*Id.* at 831.

The Plaintiff obviously has not brought this suit on behalf of the Union, but rather for his own benefit. The Court notes that the Plaintiff seeks reimbursement of the money disallowed him for "time lost" because of an alleged "prior approval" policy applied against him. Although he alleges in his Complaint that the Defendants subsequently required him to pay claims of other union members in contravention of the "prior approval" policy, his prayer for relief does not include a request that the Defendants be enjoined to require repayment to the Union of expenses paid to those other union members in the event such a policy in fact does exist. He simply seeks vindication of his own right to the money that he was required to repay and a declaration that the Defendants' conduct was unlawful.

Because the Plaintiff has not satisfied the requirements of § 501(b), his claim pursuant to § 501(a) should be dismissed.

■ Finally, the Defendants seek dismissal of the Plaintiff's state law quantum meruit and implied contract claims on the ground that they are barred by the federal doctrine of preemption since they arise out of the same actions he alleges constitute violations of the LMRDA. 29 U.S.C. § 413 explicitly provides, however, for retention of the rights of union members under state law:

Nothing contained in this subchapter shall limit the rights and remedies of any member of a labor organization under any State or Federal law. . . .

29 U.S.C. § 523 contains similar language which negates the Defendants' contention that the Plaintiff's state law claims are preempted by Title V of the LMRDA. Therefore, the Plaintiff's pendent state law claims should not be dismissed.

**NOW, THEREFORE, IT IS ORDERED** that:

(1) The Defendants' Motion to dismiss the Plaintiff's claim pursuant to 29 U.S.C. § 411 is **DENIED;**

(2) Because the Court is satisfied that its ruling on the timeliness of the Plaintiff's claim under 29 U.S.C. § 411 involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this ruling may advance the ultimate termination of the litigation, the Defendants may apply to the United States Court of Appeals for the Fourth Circuit within ten (10) days of the date this Order is filed for permission to appeal this ruling pursuant to 28 U.S.C. § 1292(b);

(3) The Defendants' Motion to dismiss the Plaintiff's claim pursuant to 29 U.S.C. § 501 is **GRANTED;**

(4) The Defendants' Motion to dismiss the Plaintiff's state law claims is **DENIED;** and

(5) Should the Defendants apply for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), that application shall stay all proceedings in this Court.