Sally HECHLER, Plaintiff-Appellant,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, an unincorporated association, Local 759 of the International Brotherhood of Electrical Workers, AFL–CIO System Council U–4, an unincorporated association, Defendants-Appellees.

No. 84–5799.

United States Court of Appeals, Eleventh Circuit.

Dec. 23, 1987.

Joel Perwin, Podhurst Orseck Parks Josefberg Eaton Meadows & Olin, P.A., Miami, Fla., for plaintiff-appellant.

Robert A. Sugarman, Ft. Lauderdale, Fla., Richard M. Resnick, Washington, D.C., Allan M. Elster, Miami, Fla., for defendants-appellees.

Before CLARK, Circuit Judge, HENDERSON [*], and TUTTLE, Senior Circuit Judges.

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

TUTTLE, Senior Circuit Judge:

This case is before us on remand from the Supreme Court. In *IBEW v. Hechler*, —— U.S. ——, 107 S.Ct. 2161, 2168, 95 L.Ed.2d 791 (1987), the Court reversed this court's holding that Hechler's complaint was not based on federal law, stating instead that Hechler "is precluded from evading the pre-emptive force of § 301 [29 U.S.C. § 185 (1976)] by casting her claim as a state-law tort[ious breach-of-contract] action." The Court then remanded the case in order for this court to determine whether Hechler's claim was barred by the applicable statute of limitations under federal law. We now hold that Hechler's complaint was timely because it was filed less than five years after the alleged breach occurred. We therefore reverse the district court's order dismissing the action and remand for further proceedings.

[*] See Rule 34–2(b), Rules of the U.S. Court of

## I. STATEMENT OF THE CASE

The facts pertinent to this case are set out in the opinion of the Supreme Court. *See id.*, 107 S.Ct. at 2163–64. We note only that Hechler claims that she was a third-party beneficiary of the collective bargaining agreement between the International Brotherhood of Electrical Workers (IBEW) and her employer and that the IBEW breached duties it assumed for her benefit under that contract. The IBEW does not contest Hechler's right to bring such a claim. *See id.* at 2169 & n. 7.

## II. DISCUSSION

### A. *Introduction*

We have before us a creative use of the federal labor laws that inverts the traditional roles of the parties. Section 301 of the Labor–Management Relations Act (LMRA), 29 U.S.C. § 185, provides in subsection (a) that "[s]uits for violation of contracts between an employer and a labor organization representing employees ... may be brought in [the] district court[s] of the United States." Typically, the union (or an employee/union member) invokes section 301 when suing the *employer*. When a union member wishes to sue the *union* based on problems arising from the employment situation, he generally files a "duty of fair representation" claim alleging that the union acted toward him in a "discriminatory, dishonest, arbitrary, or perfunctory" manner. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983) (duty implied under the scheme of the National Labor Relations Act (NLRA)). Often, the individual employee will sue both the employer and the union, resulting in what is commonly called a "hybrid section 301/fair representation claim." *See, e.g., id.* at 165, 103 S.Ct. at 2291. Here, however, the employee is using section 301 to sue the *union*, rather than suing the employer or using the fair representation theory against the union. By doing so the employee is attempting to stand in the shoes of the employer to en-

Appeals for the Eleventh Circuit.

force promises made to it allegedly for the employee's benefit.

■ If this were a typical case there would be little dispute over which statute of limitations would apply. When the union sues the employer under section 301 for breaching the collective bargaining agreement, the limitations period applicable to state contract actions governs. *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16 L.Ed.2d 192 (1966). When the union member sues the union for breaching its duty of fair representation, the six-month statute of limitations established in section 10(b) of the NLRA, 29 U.S.C. § 160(b), applies. *Erkins v. United Steelworkers*, 723 F.2d 837, 839 (11th Cir.), *cert. denied*, 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984). Finally, should the case present a hybrid cause of action, the six-month statute of limitations of section 10(b) again would apply. *DelCostello*, 462 U.S. at 169–70, 103 S.Ct. at 2293–94. Since none of these situations is involved here, however, we turn instead to the thicket of law known as federal labor policy.

### B. *Hoosier Cardinal and DelCostello*

The Supreme Court has rendered two important decisions regarding the statute of limitations for section 301 actions. The first, *Hoosier Cardinal,* involved a suit by a union against an employer for breach of the collective bargaining agreement. *See Hoosier Cardinal*, 383 U.S. at 698, 86 S.Ct. at 1109. At stake under the agreement was the payment of employees for vacation time unused prior to termination. Nearly seven years after a group of employees was dismissed without receiving accumulated vacation pay, the union filed suit in federal court. *Id.* at 698–99, 86 S.Ct. at 1109–10. The employer urged the Court to "close the statutory gap left by Congress" and establish for LMRA cases a statute of limitations shorter than seven years. The *Hoosier Cardinal* Court, however, declined to devise a uniform time limitation for section 301 suits, even though "the subject matter of § 301 is 'peculiarly one that calls

for uniform law.'" *Id.* at 701, 86 S.Ct. at 1111. Instead, the Court remarked:

> The need for uniformity ... is greatest where its absence would threaten the smooth functioning of those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it. For the most part, statutes of limitations come into play only when these processes have already broken down. Lack of uniformity in this area is therefore unlikely to frustrate in any important way the achievement of any significant goal of labor policy. Thus, although a uniform limitations provision for § 301 suits might well constitute a desirable statutory addition, there is no justification for the drastic sort of judicial legislation that is urged upon us.

*Id.* at 702–03, 86 S.Ct. at 1111–12 (footnote omitted). The Court then looked to state law to find the statute of limitations appropriate for the breach of contract alleged. *See id.* at 705 & n. 7, 86 S.Ct. at 1113 & n. 7. Even though Indiana maintained a six-year limitations period for contract actions, the Court found that the time was sufficiently short to comport with the additional goal of federal labor law to "relatively rapid[ly] dispos[e] of labor disputes." *Id.* at 707, 86 S.Ct. at 1114.

In *DelCostello*, the Supreme Court considered a pair of hybrid claims brought by employees against both their employers and their unions. It began by noting that sometimes state statutes of limitations might frustrate the operation of federal law. *See DelCostello*, 462 U.S. at 161–62, 103 S.Ct. at 2289. Calling *Hoosier Cardinal* "a straightforward breach-of-contract suit under § 301," the Court then distinguished that case by noting that no challenge to the private settlement of disputes under the labor-management agreement was involved there. In addition, the claim in *Hoosier Cardinal* had a close analogy in state law. *See id.* at 165, 103 S.Ct. at 2291. In contrast, the hybrid section 301/fair representation actions of *DelCostello* implicated national interests in the finality of settlements under collective bargaining agree-

ments and in stable bargaining relationships. Moreover, a federal statute of limitations, section 10(b) of the NLRA, was designed to accommodate a balancing of these national interests against the employees' interests in avoiding unjust settlements. *See id.* at 168–70, 103 S.Ct. at 2292–94; *Davis v. UAW,* 765 F.2d 1510, 1514 (11th Cir.1985), *cert. denied,* 475 U.S. 1057, 106 S.Ct. 1284, 89 L.Ed.2d 592 (1986). Thus, because "a rule from elsewhere in federal law clearly provide[d] a closer analogy than available state statutes, and [because] the federal policies at stake and the practicalities of litigation [made] that rule a significantly more appropriate vehicle for interstitial lawmaking," the Court applied the six-month limitations period of section 10(b) to the hybrid claims. *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294.

### C. *Post–DelCostello Developments*

Our review of labor policy requires that we next turn to post-*DelCostello* cases decided under the Labor–Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 401–531. The LMRDA, described as the union member's "bill of rights," is often used when union members sue their unions, as in the present case. Like section 301 of the LMRA, the LMRDA contains no explicit statute of limitations.

This court in *Davis* discussed the applicable limitations period for LMRDA actions. The plaintiff in *Davis* alleged that the union expelled him for exercising his statutory right of free speech under 29 U.S.C. § 411(a)(2). Approximately nine and one-half months after his expulsion, the plaintiff filed suit against the union. The Eleventh Circuit found the filing untimely, applying the six-month limitations period of NLRA section 10(b) to the plaintiff's claim. *See Davis,* 765 F.2d at 1515. In doing so, this court initially looked to the reasoning of *DelCostello:*

> As in *DelCostello,* there are no closely analogous actions under the state law. In addition, there is a "family resem-

blance" between rights asserted under the LMRDA and unfair labor practice charges under the NLRA, in that both seek to "protect[ ] ... individual workers from arbitrary actions by unions, which have been appointed the exclusive representatives of such individuals in the workplace."

*Id.* at 1514 (footnote omitted). However, the court noted that different policy objectives distinguished hybrid from LMRDA claims. Unlike *DelCostello*'s hybrid action, LMRDA claims did not implicate "national interests in stable labor-management bargaining relationships and the speedy, final resolution of disputes under a collective bargaining agreement." *Id.* In addition, the free speech right of the employee in LMRDA actions seemed of much greater importance than the employees' interests in *DelCostello.* Yet even with these distinctions, the court returned to the *DelCostello* holding:

> Nevertheless, we feel constrained by the analysis employed in *DelCostello* to apply the same limitations period to the present lawsuit. In *DelCostello,* the Supreme Court found a strong connection between the national interests in labor peace and the necessity of a short time period in which to bring an action based on a labor union's duty of fair representation to its members. We believe we are bound to find a similar connection between labor peace and an action based on a union's alleged mistreatment of its members by the denial of statutorily protected rights. We accordingly hold that the six-month limitations period of 29 U.S.C. § 160(b) [§ 10(b) of the NLRA] applies to LMRDA actions brought under 29 U.S.C. § 412 alleging union violations of 29 U.S.C. § 411.

*Id.* at 1514–15 (footnotes omitted).

■ The *Davis* decision has not gone without criticism.[1] *See, e.g., Reed v. United Transportation Union,* 633 F.Supp. 1516, 1522–25 (W.D.N.C.1986) (disagreeing

---

1. Of course, we must follow *Davis* if we find that it applies to this case, regardless of the soundness of its holding. One panel of this court cannot overrule another; that power is reserved to the court sitting en banc and the United States Supreme Court. *Julius v. Johnson,* 755 F.2d 1403, 1404 (11th Cir.1985).

with the "sudden conclusion" of *Davis*); *Rector v. Local Union No. 10, International Union of Elevator Constructors*, 625 F.Supp. 174, 180–81 (D.Md.1985); *Rodonich v. Housewreckers Union Local 95 of Laborers' International Union*, 624 F.Supp. 678, 682 & n. 1 (S.D.N.Y.1985). Considering LMRDA claims to have a "family resemblance" to unfair labor practice complaints may result in a uniform six-month limitations period being applied in all lawsuits against unions by their members, since nearly any other claim could be characterized in the same way. *See Rector*, 625 F.Supp. at 179. Moreover, LMRDA's "bill of rights" is a statute modeled after the federal Bill of Rights. Thus, "the union member's interest represents a national policy" in increasing union democracy, unlike the merely personal objectives pursued in a typical hybrid case. *Reed*, 633 F.Supp. at 1524. This type of interest is not one ordinarily limited without a compelling justification. *Id.* These suits also have a close analogy to civil rights claims, potentially rendering the statute of limitations applicable to civil rights actions more appropriate than section 10(b). *See, e.g., id.* at 1525 (using state statute of limitations applicable for personal injury actions because it would apply to a federal civil rights action); *Rodonich*, 624 F.Supp. at 682–83 & n. 2 (applying state statute of limitations applicable to federal civil rights actions).

### D. *The Issue*

We must decide which statute of limitations applies to Hechler's section 301 claim against the IBEW. As noted earlier, she asserts that she may sue the union as a third-party beneficiary of the union's obligations under the collective bargaining agreement. Hechler urges us to apply Florida's five-year statute of limitations for actions upon a written contract,[2] calling her claim a straightforward-breach-of contract

action under *Hoosier Cardinal*. Contrary to *DelCostello*, she contends that her situation impacts at best only tangentially the central dispute resolution procedures lying at the heart of the collective bargaining agreement. Neither the grievance nor the arbitration procedure was involved here. In fact, Hechler maintains that the IBEW was obligated to help her *avoid* those procedures by adequately training her for her job. Finally, Hechler distinguishes *Davis* by arguing that it applies only when the labor-management relationship is directly implicated[3] and when no closely analogous state action exists.

The IBEW, to the contrary, argues that section 10(b)'s six-month limitations period applies to Hechler's claim. The union devotes much of its brief to characterizing Hechler's action as one based solely on the IBEW's "duty of fair representation." This argument apparently found favor with the district court. That court, citing *Mahoney v. Chicago Pneumatic Tool Co.*, 111 LRRM 2839 (W.D.Mich.1982), held that Hechler's allegations regarding improper training by the union and its failure to police her workplace amounted merely to a claim that the IBEW breached its fair representation duty. Under this court's holding in *Erkins*, 723 F.2d at 838, the district court applied section 10(b) and dismissed Hechler's complaint as untimely. The union also argues that Hechler's suit affects labor-management relations in that it calls for an interpretation of the obligations under the collective bargaining agreement accepted by those parties.

■ We believe that the district court erred in characterizing Hechler's claim as alleging only a breach of the IBEW's duty of fair representation.[4] In addition, we agree with Hechler that her section 301 complaint for breach of contract is limited by Florida's five-year statute of limitations for actions upon a written contract. Be-

---

**2.** *See* Fla.Stat.Ann. § 95.11(2)(b) (West 1982).

**3.** We do not read *Davis* in this manner. However, in light of our discussion of the case, *infra*, we need not decide the correctness of this assertion.

**4.** In fact, it appears that the Supreme Court has construed Hechler's claim as adequately alleging a cause of action based on the positive tort flowing from the breach of contract. *See Hechler*, 107 S.Ct. at 2167.

cause Hechler filed suit well within the five-year period, her cause of action should not have been dismissed as untimely.

■ As stated by this Circuit, *DelCostello* requires that we apply a "fluid balancing test." *Samples v. Ryder Truck Lines, Inc.*, 755 F.2d 881, 888 (11th Cir.1985). We must adopt a state law limitations period if it provides a direct analogy to the particular section 301 claim at issue and if it adequately comports with the policies underlying federal labor law. Otherwise, "if state law does not afford sufficiently direct guidance," we are to use section 10(b). *Id. Hoosier Cardinal* and *DelCostello* themselves show us the differing results of the balancing process, and *Davis* details the balancing in the context of an action under the LMRDA.

Initially, we believe that the Florida actions for a tort arising from a breach of contract provide a "direct analogy" to Hechler's claim under section 301. In its opinion remanding this case, the Supreme Court stated:

Another party, such as a labor union, of course, may assume a responsibility towards employees by accepting a duty of care through a contractual arrangement. If a party breaches a contractual duty, the settled rule under Florida law is that *the aggrieved party may bring either an action for breach of contract or a tort action for the injuries suffered as a result of the breach.* The threshold inquiry for determining if a cause of action exists is an examination of the contract to ascertain what duties were accepted by each of the parties and the scope of those duties.

*In her complaint, [Hechler] alleges precisely this type of tortious breach-of-contract claim.* She asserts that "pursuant to contracts and agreements" between the [IBEW] and Florida Power [Hechler's employer], "to which contracts and agreements [Hechler] was a third-party beneficiary," the [IBEW] owed [her] a duty of care to ensure her a safe working environment. Having assumed this duty under the collective-bargaining agreement, the [IBEW]—according to

the complaint—was then negligent "by allowing [Hechler] to be assigned to work in ... a dangerous location [without the proper training and was further negligent by failing to provide or enforce safety rules]."

*Hechler,* 107 S.Ct. at 2167–68 (citations omitted) (emphasis added). Hechler's section 301 claim is thus closely analogous—if not identical—to "an ordinary breach-of-contract case" under Florida law. *See DelCostello,* 462 U.S. at 163, 103 S.Ct. at 2289 (analyzing *Hoosier Cardinal* ). It is merely an action for damages caused by an alleged breach of obligations in the collective bargaining agreement. The *claim* is no different from that in *Hoosier Cardinal* —only the *parties* have changed. Under Florida law, Hechler could bring a breach-of-contract action based on these allegations. Of course, at trial she must prove that the IBEW made promises to her employer regarding training and monitoring that inured to her benefit and that the IBEW subsequently breached its duty. However, Hechler certainly has alleged other than a breach of the duty of fair representation, and the district court erred in concluding differently. She therefore is correct in suggesting that Florida's statute of limitations for actions upon a written contract would be an appropriate limitations choice.

With the first part of our "fluid balancing" complete, we now look to the extent that application of the state statute of limitations impinges upon federal labor law interests. From prior cases we have identified four at least partially distinct national labor policies. According to *DelCostello,* national intersts exist in (1) the finality of settlements under collective bargaining agreements and (2) stable bargaining relationships between labor and management. *Hoosier Cardinal* suggests that federal labor law is concerned with (3) the relatively rapid disposition of labor disputes. Finally, *Davis* enunciates a national interest in (4) maintaining labor peace in general. We consider each of these policies in turn.

Disposing of the first interest is relatively easy. Unlike *DelCostello,* we have be-

fore us no challenge to a private settlement under the collective bargaining agreement. No grievance or arbitration procedure was involved here. In fact, as noted earlier, Hechler complains that part of the IBEW's duty was to help her avoid these procedures altogether. Because this finality interest is not at stake, application of a state statute of limitations here will not impinge upon it.

The next federal labor policy is one favoring stable bargaining relationships between labor and management. The IBEW insists that, because the court must interpret the language of the collective bargaining agreement, resorting to non-uniform longer state law limitations periods would undermine bargaining stability. According to the union, Hechler's allegations "call[ ] into question agreements or understandings with or affecting the employer, to which the union (by its actions or inactions) is a party." Supp.Br. for Defendants–Appellees at 12. Moreover, if Hechler was to prevail at trial, the ruling "would undermine the parties' settled understanding of their respective rights and obligations, and would thus effectively create a different relationship between the [IBEW] and [Hechler's employer], one governed by rules quite different than those the parties have been following heretofore." *Id.* at 14. We do not dispute the fact that Hechler's claim depends upon an interpretation of the collective bargaining agreement. However, we fail to see the distinction between this case and *Hoosier Cardinal.* There, the contract claim turned upon an interpretation of the collective bargaining agreement as well. Yet the application of Indiana's six-year statute of limitations was not outweighed by the potential impact it would have on the bargaining relationship. The directness of the analogy to a state law action for breach of contract was more than sufficient to counter the rule changes that might occur if potentially meritorious suits were authorized for up to six years. Such is the case here. Although a successful suit by Hechler might affect the IBEW's understanding of the training and monitoring obligations it assumed under the collective bargaining

agreement, the direct analogy to a pure breach-of-contract action here "militate[s] against application of § 10(b)'s six-month period," *Erkins,* 723 F.2d at 839, and toward application of Florida's five-year limit.

*Hoosier Cardinal* expressed a federal interest in the relatively rapid disposition of labor disputes. To that Court, six years was rapid enough for disposing of pure breach-of-contract suits brought under section 301. Our training in mathematics is sufficient for us to recognize that five is less than six. Thus, in the context of this suit for breach of contract, application of Florida's five-year period does not impinge upon this national interest.

The final federal policy, discussed in *Davis,* is the one regarding generalized labor peace. Preliminarily, we note that the *Davis* court specifically remarked that the claim there was not closely analogous to any actions under state law. *See Davis,* 765 F.2d at 1514. Moreover, *Davis* decided that LMRDA actions bore a "family resemblance" to unfair labor practices charges in that both sought to protect individual workers from arbitrary union action. *See id.* These findings, although soundly questioned by other courts, were necessary to tip the balance toward application of the federal statute of limitations. As we have repeatedly stated, Hechler's complaint has a close analogy to a state law claim. We also do not see any particular "family resemblance" between Hechler's suit for damages and typical unfair labor practices charges. Hechler alleges that the IBEW acted *negligently* in failing to properly train and monitor, not that it acted arbitrarily or discriminatorily toward her. The initial balance is thus much different here.

In addition, we believe that the national interest in generalized labor peace is not as strong here as it was in *Davis.* The situation in *Davis* was one with a direct connection to union strife: the plaintiff, a longtime union member and former union officer, was expelled for threatening to "destroy" the local union. He also was extremely critical of current union officials, and refused to attend the expulsion pro-

ceedings because he feared that "physical altercations" might occur. *See Davis*, 765 F.2d at 1511–12. His activism hence affected the viability of the union itself, for his obvious purpose was to oust the current union leadership or "destroy" the union altogether. In urgent situations such as these, the interest in labor peace likely is served by disposing of the matter quickly. In such a case, the six-month limitations period might be appropriate. However, our case lacks a direct, immediate connection to union unrest. Granted, a successful suit by Hechler might have adverse financial consequences for the union. But this is not a situation where union members are pitted one against another, or where the functional viability of the organization is immediately threatened. Thus we see much less of a need for the short statute of limitations of section 10(b), and believe that here the direct analogy to state law outweighs any adverse effects upon the national interest in labor peace.

## III. SUMMARY

In sum, we adhere to the rationale of the court in *Rector v. Local Union No. 10, International Union of Elevator Constructors*, 625 F.Supp. 174, 181 (D.Md. 1985):

> The sheer number of cases applying [s]ection 10(b)'s six-month limitation period to [various labor law] suits indicates that such a brief time has the practical effect of barring many potentially meritorious claims. Until the Supreme Court ... provide[s] clear instructions to depart from the general rule of applying analogous state limitations periods to [breach-of-contract cases under section 301], this [c]ourt will hold to its [narrower] reading of *DelCostello*.

We therefore reverse the order dismissing Hechler's suit and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**